UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

DAVID WALDING, et al.,                    )
                                          )
          Plaintiffs,                     )
                                          )
VS.                                       )          Civil Action No:  SA-08-CA-124-XR
                                          )
UNITED STATES OF AMERICA, et al.,         )
                                          )
          Defendants.                     )

## ORDER

On this date, the Court considered Magistrate Judge Primomo's Memorandum and

Recommendation (docket no. 93) on the Individual Federal Defendants'[1] Motion to Dismiss

Plaintiffs' Complaint and Alternative Motion for Summary Judgment, and the objections thereto.

The Court ACCEPTS the recommendation and will GRANT IN PART and DENY IN PART the

Individual Federal Defendants' Motion to Dismiss (docket no. 63) and will DISMISS AS MOOT

the Alternative Motion for Summary Judgment (docket no. 63).

## I. Background

The Second Amended Complaint (docket no. 48) is the live pleading in this case.  Plaintiffs

are twelve young men born in Central America who were detained in the United States by Border

Patrol agents as undocumented and placed in federal custody pending their immigration court

---

[1] The Individual Federal Defendants include: (1) Jose Gonzalez, a Field Specialist for the Office of
Refugee Resettlement ("ORR")'s Division of Unaccompanied Children's Services ("DUCS");(2) James De
La Cruz, a DUCS Field Specialist; (3) Susana Ortiz-Ang, the Deputy Director of DUCS; (4) Maureen Dunn,
the Director of DUCS; (5) Martha E. Newton, ORR's former Director; (6) Marc Moore, a Supervisory
Detention and Deportation Officer for U.S. Immigration and Customs Enforcement ("ICE"); (7) Jose
Mungia, the former ICE Juvenile Coordinator for the San Antonio area; and (8) James Orr, an ICE employee
who is the Assistant Officer in Charge of the South Texas Detention Complex in Pearsall, Texas.

proceedings. Am. Compl. ¶ 1. Each of the Plaintiffs was a minor at the time of his detention, and each was placed at the "Away From Home, Inc." facility located in Nixon, Texas ("the Nixon Facility") to await the final adjudication of his immigration status. *Id.* Plaintiffs allege that they suffered "grave and repeated sexual, physical and emotional abuse" at the facility and that Defendants failed to comply with the class action settlement agreement regarding the treatment of unaccompanied minors in *Flores v. Reno*. *Id.* ¶ 2.

Plaintiffs' Second Amended Complaint contains twenty causes of action against various Defendants, including: (1) a *Bivens* claim for damages brought by all Plaintiffs against Defendants Belinda Leal and/or Jane Doe, guards at the Nixon facility, in their individual capacities for sexual abuse in violation of the Plaintiffs' Fifth and Eighth Amendment rights; (2) a *Bivens* claim for damages by Plaintiff J.M.R. against Defendant Efraen Garcia, a guard at the Nixon Facility, in his individual capacity for assault, battery, and use of excessive force in violation of his Fifth and Eighth Amendment rights; (3) a *Bivens* claim for damages by Plaintiff O.E.F. against Defendants Vasquez and Velasquez, staff at the Nixon Facility, in their individual capacities for assault, battery, and use of excessive force in violation of his Fifth and Eighth Amendment rights;[2] (4) a *Bivens* claim by all Plaintiffs against Defendants Jose Gonzalez and James De La Cruz, field specialists for the U.S. Office of Refugee Resettlement ("ORR"), in their individual capacities for their refusal and failure to properly require and enforce policies and practices to ensure the Plaintiffs' safety from sexual and physical assaults, in violation of the Plaintiffs' Fifth and Eighth Amendment rights; (5) a *Bivens* claim for damages by Plaintiff E.H.C. against Defendants James De La Cruz, Jose Mungia, an ICE

---

[2] Although the First, Second, and Third Causes of Action are brought pursuant to *Bivens*, the named Defendants in these causes of action were employees of the Nixon Facility. Plaintiffs allege that these individuals served as *de facto* federal employees.

official, Maggie Gaytan, director of the Nixon Facility, and Maureen Dunn, Director of the Division of Unaccompanied Children's Services ("DUCS") of ORR in Washington, D.C., in their individual capacities for retaliation against him for reporting sexual abuse in violation of his First, Fifth, and Eighth Amendment rights, and for injunctive relief in their personal and official capacities; (6) a *Bivens* claim for damages by Plaintiff W.O.G. against Defendant Belinda Leal and/or Defendant Jane Doe individually for retaliation and Defendant Maggie Gaytan individually for reckless indifference to the abuse in violation of his First, Fifth, and Eighth Amendment rights, and for injunctive relief against these Defendants in their personal and official capacities; (7) a *Bivens* claim for damages by Plaintiff W.O.G. against Defendant James Orr, an ICE official and Assistant Officer in Charge of the South Texas Detention Complex, in his individual capacity for violation of his Fifth and Eighth Amendment rights based on his detention in an adult facility despite being a minor; (8) a *Bivens* claim for damages by Plaintiffs E.R.J. and P.A.S.G. against Defendants Maggie Gaytan, Jose Gonzalez, and James De La Cruz individually for violation of their First and Fifth Amendment rights to "an undisturbed attorney-client relationship and to full and free communications with their attorneys"; (9) a § 1983 claim by all Plaintiffs for damages and for injunctive relief against the "TDFPS Defendants" Carey Cockrell, Dianna Spiser and Joyce James in their individual capacities for violation of their Fourteenth Amendment rights to substantive due process[3]; (10) a claim by all Plaintiffs against Defendants Marc Moore, ICE Regional Director, Martha E. Newton, Director of the Unaccompanied Children's Services Division, Office of Refugee Resettlement ("ORR"), U.S. Department of Health and Human Services., Maureen Dunn, Susanna Ortiz-Ang, Deputy Director

---

[3] The Ninth Cause of Action was the subject of the TDFPS Defendants' Motion to Dismiss (docket no. 59), and was dismissed in a separate order.

of the Unaccompanied Children's Services Division of ORR in Washington, D.C., James De La Cruz, Jose Gonzalez and Jose Mungia for injunctive relief requiring compliance with the *Flores* settlement in their personal and official capacities pursuant to 5 U.S.C. § 702 of the Administrative Procedures Act; (11) a *Bivens* claim by all Plaintiffs for damages against Defendants Marc Moore, Jose Gonzalez, James De La Cruz, Martha Newton, Maureen Dunn, and Susanna Ortiz-Ang individually for deprivation of property and liberty rights in "safe conditions" guaranteed by the *Flores* settlement agreement by "knowingly and intentionally refusing to halt the rampant physical/sexual abuses at the Nixon facility or to otherwise protect the Plaintiffs" in violation of the Fifth Amendment, and for injunctive relief against Defendants in their personal and official capacities; (12) a claim for negligence under the Federal Tort Claims Act by all Plaintiffs against the United States, alleging negligent oversight of the Nixon Facility'" (13) a claim for negligence under the Federal Tort Claims Act by all Plaintiffs against the United States, alleging that negligent selection/contracting and negligent supervision of the Nixon Facility; (14) a claim by all Plaintiffs under the Federal Tort Claims Act against the United States based on the alleged negligence of Defendant Away From Home, Inc.; (15) a claim by Plaintiff W.O.G. under the Federal Tort Claims Act against the United States based on Defendant James Orr's alleged negligence in detaining him in an adult facility even though he was only fifteen years old; (16) a claim by all Plaintiffs under the Federal Tort Claims Act against the United States based on the conduct of the ICE and ORR Defendants, and Defendants Maggie Gaytan, "Sara Moe" and "James Roe," two unnamed and unidentified persons employed at the Nixon Facility and who had supervisory duties, for negligent infliction of emotional distress; (17) a claim by all Plaintiffs against Defendant Away From Home, Inc. and Defendants Gaytan, Roe, and Moe for negligence and gross negligence under Texas state

law; (18) a claim by all Plaintiffs against Defendant Leal and/or Jane Doe, by Plaintiff J.M.R. against Efraen Garcia, by Plaintiff O.E.F. against Defendants Vasquez and Velasquez for assault and battery, as well as Defendant Away From Home, Inc. based on the doctrine of *respondeat superior* under Texas law; (19) a claim by all Plaintiffs against Defendant Leal and/or Jane Doe, by Plaintiff J.M.R. against Efraen Garcia, by Plaintiff O.E.F. against Defendants Vasquez and Velasquez for intentional infliction of emotional distress, as well as Defendant Away From Home, Inc. based on the doctrine of *respondeat superior* under Texas law; and (20) a claim by Plaintiffs E.R.J. and P.A.S.G. against Defendants Gonzalez, Away From Home, Inc. and Gaytan for damages for "interference with attorney-client relations."

## II. Analysis

### A. Individual Federal Defendants' Motion to Dismiss and Alternative Motion for Summary Judgment (docket no. 63) and related briefing

The Individual Defendants are sued in the Fourth, Fifth, Seventh, Eighth, Tenth, Eleventh, and Twentieth Causes of Action. The Individual Defendants invoke the defense of qualified immunity and move to dismiss all these claims. Specifically, they argue: (1) Plaintiffs' Eighth Amendment claims asserted in their Fourth, Fifth, and Seventh Causes of Action fail as a matter of law because the Eighth Amendment applies only in criminal actions following a conviction, while immigration proceedings are civil in nature and Plaintiffs are essentially pretrial detainees; (2) Plaintiffs' Fourth Cause of Action against Defendants Gonzalez and De La Cruz alleging violation of their Fifth Amendment rights for failure to protect is based solely on *respondeat superior* and fails to allege any personal participation by these Defendants, deliberate indifference, or that they implemented a deficient policy that was the moving force of the constitutional violation; (3) Plaintiff

E.H.C's claim (Fifth Cause of Action) for retaliation "fails to allege a chronology of events from which this Court could plausibly infer retaliation"; (4) Plaintiff W.O.G.'s claim (Seventh Cause of Action) against Defendant Orr fails because placing a minor in an adult detention facility does not violate the Constitution; (5) Plaintiffs E.R.J. and P.A.S.G. fail to state a *Bivens* claim in the Eighth and Twentieth Causes of Action for interference with attorney-client relationships because they have not alleged that Defendants interfered with their ability to obtain counsel or pursue any legal claim; (6) the Eleventh Cause of Action against Defendants Moore, Gonzalez, De La Cruz, Newton, Dunn, and Ortiz-Ang fails as a matter of law because the *Flores* settlement did not create liberty or property interests that could support a *Bivens* claim and, even if it did, that would not have been clearly established at the time; (7) in the alternative, Defendant Orr is entitled to summary judgment on the Seventh Cause of Action because his actions were objectively reasonable; and (8) Plaintiffs may not sue federal officials in their individual capacities for equitable relief, and thus those portions of the Fifth, Tenth, and Eleventh Causes of Action must be dismissed.

Plaintiffs respond that: (1) they will stipulate to dismissal of their Eighth Amendment claims, docket no. 77 at 5 n.1; (2) their claims against Gonzalez and De La Cruz for violations of their Fifth Amendment right to bodily integrity (Fourth Cause of Action) are not based on *respondeat superior*, but on the fact that these individuals may be liable as supervisors if they were deliberately indifferent, or if they implemented an unconstitutional policy, custom, or practice that was the moving force behind the violation; (3) Plaintiff E.H.C.'s claim (Fifth Cause of Action) sufficiently pleads a claim for retaliation; (4) Plaintiff W.O.G.'s claim (Seventh Cause of Action) against Defendant Orr survives because Plaintiff had a right to the protections of the *Flores* settlement agreement, which required placement in the least restrictive environment; (5) with regard to the

Eighth Cause of Action, Plaintiffs E.R.J. and P.A.S.G. suffered personal harms, including anxiety, confusion, and other emotional distress as a result of the interference with their attorney-client relationships, and Plaintiffs seek leave to amend their Nineteenth Cause of Action for IIED to include these damages; (6) the *Flores* settlement did create a due process entitlement; (7) Orr is not entitled to summary judgment on W.O.G.'s claim related to his placement in an adult facility at this time because Plaintiffs need additional discovery regarding the scope of Orr's discretion or authority to transfer W.O.G.; (8) Plaintiffs agree to dismiss their claims for equitable relief without prejudice to their right to re-file should circumstances warrant, docket no. 77 at 19.

**B. Magistrate Judge Primomo's Memorandum and Recommendation**

Magistrate Judge Primomo recommends the Individual Federal Defendants' Motion to Dismiss be granted in part and denied in part, and that the Motion for Partial Summary Judgment be denied as moot. Specifically, Magistrate Judge Primomo concludes that the Individual Defendants are entitled to qualified immunity on the *Flores* claims because it is not clearly established that the *Flores* agreement establishes an entitlement. Magistrate Judge Primomo recommends that the Seventh Cause of Action by Plaintiff W.O.G. against Defendant Orr be dismissed because W.O.G.'s detention in an adult facility is not a constitutional violation or, if it is, it was not clearly established law at the time. Magistrate Judge Primomo concludes that the Eighth Cause of Action by Plaintiffs E.R.J. and P.A.S.G. against defendant Gonzalez and Defendant De La Cruz alleging interference with attorney-client relations should be dismissed because Plaintiffs fail to establish a due process violation, and thus qualified immunity requires dismissal. Magistrate Judge Primomo further concludes that the Individual Defendants' motion to dismiss the Fifth Amendment claim (Fourth Cause of Action) against Defendants Gonzalez and De La Cruz should

be denied because Plaintiffs' allegations, if true, are sufficient to defeat qualified immunity at this time.  Magistrate Judge Primomo also recommends that the motion to dismiss the Fifth Cause of Action by Plaintiff E.H.C. for retaliation be denied because the pleadings sufficiently defeat the qualified immunity defense at this time.

## C. Issues requiring *de novo* review

The Individual Defendants and the Plaintiffs have filed objections to the Memorandum and Recommendation. The Court will conduct a *de novo* review of those portions of the Memorandum and Recommendation to which the parties have objected.  28 U.S.C. § 636(b)(1). This review requires examination of the entire record and an independent assessment of the law.

### 1. Fourth Cause of Action

The Fourth Cause of Action is a *Bivens* claim by all Plaintiffs against Defendants Jose Gonzalez and James De La Cruz, field specialists for the U.S. Office of Refugee Resettlement ("ORR"), in their individual capacities for violation of the Plaintiffs' Fifth Amendment rights. Plaintiffs allege that they had a Fifth Amendment right to be free from physical, emotional, and sexual abuse while being detained at the Nixon Facility.  Second Am. Compl. ¶ 184.  They allege that Defendants Gonzalez and De La Cruz were responsible for monitoring, investigating, supervising, controlling and correcting the treatment of the minors at the facility, but they "intentionally refused and failed to properly require and enforce policies and practices to ensure the Plaintiffs' safety from sexual and physical assaults," "knew of, or were deliberately indifferent to, the widespread sexual and physical abuse of the minors detained at the Nixon facility," and "with knowledge and/or deliberate indifference, failed to take any action of any kind to protect the Plaintiffs while they were detained at the Nixon facility."  *Id.* ¶¶ 185-188.

Plaintiffs further allege that "[u]pon information and belief, the widespread sexual, physical and emotional abuse at the Nixon facility was rampant, open and notorious and either was known or should have been known to all Defendants." ¶ 101. "Defendants failed to take any reasonable steps to correct the situation at the Nixon facility or to protect or assist the Plaintiffs, but rather acquiesced to and fostered such ongoing abuses." ¶ 102. "Upon information and belief, these and other abuses and violations described below were repeatedly reported to local law enforcement officers and the investigators at the Texas Department of Family and Protective Services, who in turn notified Defendant De La Cruz and the other federal officials and employees named as Defendants in this case." ¶ 103. "Upon information and belief, Defendant De La Cruz also had direct knowledge of the abuses and violations as a result of his supervision and monitoring of the Nixon facility, and in turn notified the other defendants in this case." ¶ 104. In contracting with facilities to house and care for unaccompanied minors, Defendants "remained responsible for monitoring, investigating, supervising and controlling the conditions and treatment of the unaccompanied minors detained at the Nixon facility." ¶ 121. The United States, through its agencies, "maintained constant and detailed control and supervision of the conditions and treatment of the unaccompanied minors detained at the Nixon facility, as well as other aspects of its operations." ¶ 127. "All Defendants knew and/or should have known and/or were deliberately indifferent to the rampant physical and sexual abuse of the Plaintiffs at the Nixon facility." ¶ 132. "Defendants United States, Mungia, Moore, Gonzalez, De La Cruz, Dunn, Newton and Ortiz-Ang knowingly, intentionally and/or with willful indifference and/or recklessly and/or negligently refused and failed to properly monitor, supervise, control, report on, and correct the ongoing conditions and treatment of the minors at the Nixon facility." ¶ 138. "By continuing to permit the ongoing abuses at the Nixon facility, without

taking any reasonable steps to protect the Plaintiffs, such as suspension of funding or requiring the termination or other discipline of staff, Defendants Mungia, Moore, Gonzalez, De La Cruz, Dunn, Newton and Ortiz-Ang de facto agreed to such abuse, and aided, abetted and conspired to permit its continuance." ¶ 139. "Defendants Dunn, Newton, Ortiz-Ang, Moore, De La Cruz and Gonzalez took no reasonable steps to address the ongoing and rampant abuses and legal violations at the Nixon facility." ¶ 142. "All Plaintiffs have suffered physical, emotional and other harms as a result of the actions of the Defendants." ¶ 155.

Defendants Gonzalez and De La Cruz, who are the only defendants specified in Count Four, assert that they are entitled to qualified immunity because the claim is based entirely upon their supervisory authority, but Defendants cannot be liable under *Bivens* on a theory of *respondeat superior*. Defendants argue that nothing in the Complaint establishes that they personally participated in the alleged abuses, which were committed by AFH employees. Defendants also point out that they did not have direct authority over the alleged abusers. Because Plaintiffs complain of "episodic acts or omissions," Defendants argue, they must show that the Defendants had subjective knowledge of a substantial risk of serious harm to plaintiffs but responded with deliberate indifference to that risk. Defendants contend that Plaintiffs have failed to allege facts establishing either actual knowledge or deliberate indifference. Specifically, Defendants argue that: (1) although Plaintiffs describe the alleged abuse at the Nixon Facility as "widespread" and "rampant, open, and notorious," they fail to identify the date of any of the abusive incidents or the time period over which they allegedly occurred; (2) Plaintiffs do not claim that any of the incidents took place after Defendants purportedly knew of the abuse; (3) Plaintiffs do not claim that Gonzalez witnessed the abuse or describe what knowledge he obtained, or when or how he obtained it; (4) Plaintiffs do not

allege that any victim or his attorney reported abuse to Gonzalez, De La Cruz, or any other federal officer; (5) Plaintiffs do not identify the time, place, or manner of a single one of the alleged "repeated" reports allegedly made to local law enforcement officers and TDFPS investigators; (6) Plaintiffs "offer no support for the assertion that local law enforcement officers and state investigators 'notified Defendant De La Cruz and the other federal officials and employees named as Defendants' ... and even if they did, there is no suggestion that this notification took place *prior to* any alleged assault." Thus, Defendants argue, Plaintiffs fail to offer facts establishing that Gonzalez and De La Cruz were aware of facts from which an inference could be drawn that sexual and physical abuse was occurring at the facility, and in fact drew that inference.

Defendants further argue that Plaintiffs' "conclusory allegations that Gonzalez and De La Cruz failed to adequately 'monitor[], investigat[e], supervis[e], control[] and correct[] the treatment of minors detained at the Nixon facility" and "refused and failed to properly require and enforce policies and practices to ensure the Plaintiffs' safety from sexual and physical assault" fail to show deliberate indifference. Defendants argue that Plaintiffs allege no facts that would demonstrate a causal connection between any act or omission by Defendants and the alleged abuse.

Defendants further contend that Plaintiffs offer no facts to indicate that they implemented a policy so deficient that it acted as a repudiation of constitutional rights and was the moving force of the alleged constitutional violation. They argue that nothing in the Complaint indicates that such a federal policy exists, much less that either Defendant personally implemented one.

Plaintiffs respond that they do not rely on *respondeat superior* as a basis for liability, but on "other well-recognized bases of liability," specifically deliberate indifference and policy and/or custom. Plaintiffs contend that Defendants are liable for their failure to act if they were deliberately

indifferent to a known or obvious risk, citing *Farmer v. Brennan*, 511 U.S. 825 (1994). Plaintiffs argue that actual knowledge will be imputed to the official if there has been a history of such abuses or if the dangerous situation is obvious. Plaintiffs contend that when a single abuse is so flagrant, it may give rise to an inference that the supervisory official must have breached his duty of proper supervision.

Plaintiffs also rely on the rule that a defendant will be liable for a constitutional violation if he implements a de facto policy or practice that is so deficient that it repudiates the plaintiff's constitutional rights. Plaintiffs assert that for nearly a year, these Defendants "continued to fail and refuse to properly train and supervise or in any other way curb the abuses at the Nixon facility" and this plainly indicates the de facto custom or policy or systematic "maladministration" of the law that results in liability. Plaintiffs further assert that the law regarding violation of Fifth Amendment rights was clearly established, and thus no qualified immunity is available.

In their Reply, Defendants note that Gonzalez and De La Cruz were not "supervisors" of the Away From Home employees "in any traditional or recognized sense" and "this alone should give the Court pause in recognizing a claim against them." Defendants state they are not aware of any authority imposing *Bivens* liability under such circumstances, and thus Plaintiffs cannot carry their burden of proving clearly established law. They also re-urge their argument that Plaintiffs "make conclusory claims of knowledge but offer no allegations of fact demonstrating that Gonzalez or De La Cruz was subjectively aware of any evidence 'pointing plainly toward the conclusion' that Nixon residents were suffering abuse." Defendants assert that Plaintiffs err in their position that knowledge may be imputed in this case, nor "have they identified any case in which a court imposed *Bivens* liability on a theory that 'a single abuse [was] so flagrant that it [gave] rise to an inference

12

that the supervisory official must have breached his duty of proper supervision."

In their Sur-Reply, Plaintiffs argue that § 1983 cases are relevant to the *Bivens* issue because the claims are parallel forms of relief and thus § 1983 cases clearly established the law. Plaintiffs argue that these Defendants had an absolute duty to provide for the safety and well-being of unaccompanied minors detained at the Nixon facility, and though they could enter into a cooperative agreement with Away From Home to assist them in providing shelter, education, and care for the children, the ORR Defendants remained ultimately responsible.

Relying primarily on *Farmer v. Brennan*, Magistrate Judge Primomo concluded that the allegation that Gonzalez and De La Cruz were aware of the abusive conduct and failed to act is sufficient to state a constitutional claim and, under the allegations presented, these Defendants would not be entitled to qualified immunity. Defendants object, arguing that Magistrate Judge Primomo erred in failing to recommend that this claim be dismissed based on qualified immunity.

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971), the Supreme Court held that a plaintiff may recover monetary damages for injuries suffered as a result of federal officials' violations of the Fourth Amendment.[4] The Supreme Court has also permitted *Bivens* damages remedies directly under the Eighth Amendment. *See Carlson v. Green*, 446 U.S. 14 (1980).

In an Eighth Amendment context, the Supreme Court has held that a prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth

---

[4] Actions under section 1983 and *Bivens* are coextensive. *Izen v. Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005) ("we have held that the constitutional torts authorized by each are coextensive"); *Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999) ("A *Bivens* action is analogous to an action under § 1983-the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials."), *overruled on other grounds by Castellano*, 352 F.3d at 948-49 & n.36).

Amendment. *Farmer v. Brennan*, 511 U.S. 825 (1994). Prison officials must provide humane conditions of confinement and must take reasonable measures to guarantee the safety of inmates. *Id.* at 832. A defendant prison official may be liable if he is deliberately indifferent to inmate health or safety. *Id.* at 835. This standard requires more than ordinary lack of due care for the prisoner's interests or safety but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. *Id.* It requires that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* at 837. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not does not create liability. *Id.* at 838; *see also id.* at 842 ("[i]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.").

In discussing the subjective deliberate indifference standard, the Court noted that, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that a risk was obvious." *Id.* at 842 (citation omitted). "For example," the Court stated, "if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus "must have known" about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.'" *Id.* at 842-43. Obviousness of a risk is not conclusive, and a prison official may show that the obviousness escaped him. *Id.* at

843 n.8.  He may not escape liability, however, if he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.  *Id.*

The Fifth Circuit has applied *Farmer*'s subjective deliberate indifference standard to measure the duty owed to pretrial detainees under the Due Process Clause.  *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 648 (5th Cir. 1996) (pretrial detainees are entitled to protection from harm pursuant to due process clause); *see also Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000) (an immigration detainee is equivalent to a pretrial detainee, and immigration detainee complaining of particular acts rather than general conditions of confinement must show the official acted with subjective deliberate indifference); *Scott v. Moore*, 114 F.3d 51, 54 (5th Cir. 1997) (pretrial detainee's sexual assault by guard was classified as an episodic act or omission, subject to subjective deliberate indifference standard for liability).[5]  The Fifth Circuit has applied the same standard for determining supervisory liability for constitutional violations committed by subordinate employees. *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 254-55 (5th Cir. 2005) (§ 1983 action against hospital administrator and nursing director for deprivations of life and liberty committed by nurse who injected patients with paralytic drug) .

Though Defendants assert that they did not have direct supervisory authority over the AFH Defendants who committed the abuses, Plaintiffs have alleged that they were in the custody of federal agencies and that Defendants had supervisory control over the facility.  These allegations

---

[5] Other courts have also applied this standard to failure-to-protect claims by immigration detainees housed in non-federal facilities.  *See, e.g.*, *Mohamed v. Aviles*, Civ. A. No. 06-4794,  2007 WL 923506 (D.N.J. March 26, 2007) (applying *Farmer* standard to failure-to-protect claims asserted by federal immigration detainees housed at county correctional center); *Despaigne v. Crolew*, 89 F. Supp. 2d 582, 586-87 (E.D. Pa. 2000).

must be accepted as true at this stage. Further, the deliberate indifference standard has not been limited to protecting detainees from the defendant's subordinate employees. *Farmer v. Brennan* involved a failure to protect from other inmates, and liability for failure to protect has been applied in the context of suicides. *See Jacobs v. West Feliciana Sheriff's Dept.*, 228 F.3d 388 (5th Cir. 2000).

"As the Supreme Court recently emphasized, the '[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)' and the non-moving party must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Southern Scrap Metal Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). This standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary claims or elements. *Id.* "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1966 (2007) (internal quotation marks omitted)).

Plaintiffs have alleged that they were in the custody of the federal agencies, that these Defendants had supervisory authority and control over the facility in which they were housed, that Defendants had knowledge of the dangers and risk of harm to Plaintiffs, that Defendants were deliberately indifferent to the risk and failed to take reasonable action, and that Plaintiffs suffered harm as a result. The Court agrees with Magistrate Judge Primomo that the Plaintiffs have stated a claim that is plausible and overcomes the qualified immunity defense. *See Brumfield v. Hollins*,

551 F.3d 322 (5th Cir. 2008) (concluding that plaintiff's allegation that sheriff's failure to implement policies pertaining to supervision and medical care and failure to train or supervise his subordinates deprived plaintiff of his constitutional right to adequate protection and reasonable medical care "alone might be enough to survive a motion to dismiss"); *Jacobs*, 228 F.3d at 393-94 (it has been clearly established since 1989 that officials will be liable for episodic acts or omissions resulting in the violation of a detainee's clearly established constitutional rights if they "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk"). The recommendation to deny the motion to dismiss this claim is accepted.

### 2. Fifth Cause of Action

Plaintiffs' Fifth Cause of Action is a *Bivens* claim for damages by Plaintiff E.H.C. against Defendants James De La Cruz, Jose Mungia, Maggie Gaytan,[6] and Maureen Dunn, in their individual capacities for retaliation against him for reporting sexual abuse in violation of his First and Fifth Amendment rights in their personal capacities. Plaintiff alleges that he reported the sexual abuses at the Nixon Facility, and was transferred from Nixon to two more secure facilities and he was left in a county jail for two weeks following the resolution of his immigration case.

Specifically, the factual predicate contained in the Second Amended Complaint alleges that E.H.C. was detained at the Nixon Facility, that Defendant Belinda Leal approached him for sexual favors, which he promptly rebuffed, and that "[i]nstead of submitting to sexual abuse, [he] became a 'whistleblower' in this case." Second Am. Comp. ¶¶ 65-67. Further, E.H.C. suffered severe

---

[6] Gaytan was the director of the Nixon Facility, Second Am. Compl. ¶ 23, and is not one of the individual federal defendant movants. De La Cruz is an ORR Field Specialist. *Id.*. ¶ 26. Plaintiff alleges that Mungia is an ICE official responsible for the assignment of unaccompanied minors to specific facilities, including the Nixon Facility. *Id.* ¶ 28. Dunn is the Director of the Unaccompanied Children's Services Division of ORR in Washington, D.C. *Id.* ¶ 30.

mental and physical harm from these incidents, but was given no psychological counseling or treatment at the Nixon Facility. *Id.* ¶¶ 68-69. "Instead of offering support and assistance, Defendants Gaytan, De La Cruz and Mungia retaliated against Plaintiff E.H.C. by transferring him to a 'staff-secure facility in Washington State, and subsequently to a still harsher 'secure' facility in Indiana, both far from his legal representative." *Id.* ¶ 70. "Although Defendants repeatedly promised to transfer Plaintiff E.H.C. to a mental health facility in Texas, this did not take place until August 2007, when he was transferred to Abraxas Hector Garza Center in San Antonio. He still received no adequate mental health care or treatment." *Id.* ¶ 72. "After removal proceedings were terminated against Plaintiff E.H.C., and his immigration status was resolved, Defendants Dunn, De La Cruz, Gonzalez and Mungia further retaliated against E.H.C. by leaving him in the Guadalupe County Jail in Seguin, Texas and interfering with his placement in a less restrictive environment." *Id.* ¶ 73. "Defendants Dunn, De La Cruz, Gonzalez, Mungia, and Ortiz-Ang acted knowingly, intentionally, willfully, and/or with deliberate indifference or negligence in violating Plaintiff E.H.C.'s right to be free from federal detention upon termination of all removal proceedings against him." *Id.* ¶ 141.[7]

The Fifth Cause of Action, ¶¶ 194-201, incorporates the factual predicate, and then makes the following allegations. "Plaintiff E.H.C. has a constitutional right under the First, Fifth, and Eighth Amendments[8] to be free of retaliation and unjust punishment for having reported the sexual

---

[7] The Court notes that the predicate factual allegations name Ortiz-Ang and Gonzalez as included in the federal individual defendants responsible for keeping E.H.C. in the county jail after his immigration proceedings terminated. Ortiz-Ang is the Deputy Director of the Unaccompanied Children's Services Division of ORR in Washington, D.C. Ortiz-Ang and Gonzalez are not named as a defendants in the Fifth Cause of Action, however.

[8] Plaintiffs agreed to dismiss the claim under the Eighth Amendment.

abuse at the Nixon facility." *Id.* ¶ 195. "Defendants De La Cruz, Mungia, Gaytan acted under color of federal law when they transferred Plaintiff E.H.C. to the medium security and then the high security facility, with their far more restrictive and punishing conditions." *Id.* ¶ 196. "Defendants made such transfer and long-term detention decisions with the intent of retaliating against Plaintiff E.H.C. for reporting the ongoing sexual abuse at the Nixon facility." *Id.* ¶ 197. "Defendants Dunn, De La Cruz and Mungia further retaliated against Plaintiff by unnecessarily detaining him in a county jail for two weeks after their jurisdiction over him was terminated by the immigration courts, and interfering with his placement in a more reasonable environment." *Id.* ¶ 198. "Plaintiff E.H.C. brings this Bivens claim for damages against Defendants Dunn, De La Cruz, Mungia and Gaytan in their personal and individual capacities." *Id.* ¶ 201.

Defendants argue that the Fifth Circuit has not recognized a constitutional right on the part of pretrial detainees to confinement in a particular institution or under a particular security classification, and other courts have held that no such right exists. Thus, Defendants contend, E.H.C. had no clearly established Fifth Amendment entitlement to placement in the least restrictive facility possible, and the alleged transfers cannot in and of themselves support a finding of retaliation. Further, Defendants argue that Plaintiff has not alleged a chronology of events from which retaliation may be plausibly inferred. Defendants contend that E.H.C. has pled no facts supporting an inference of retaliatory motive behind his transfer, does not demonstrate that any of the Defendants was actually aware or could have been aware that he was a "whistleblower," does not allege any temporal connection between his "whistleblowing" and the transfers, and does not claim that his placement in increasingly secure facilities put him at risk of physical harm. At best, Defendants assert, the vague allegations may be "logically consistent with the possibility" that his transfers were retaliatory,

19

but they do not plausibly suggest an entitlement to relief.

Plaintiff E.H.C. responds that he has stated a claim for retaliation because he alleged a constitutional right to report the sexual abuse, that Defendants intended to retaliate against him for the exercise of that right, and that they did commit retaliatory adverse acts of transferring him to increasingly more secure facilities far from his legal representative, leaving him in a county jail, and interfering with his placement in a less restrictive environment. Plaintiff further asserts that the chronology is obvious from a common sense reading of the Complaint, and gives rise to a clear inference of retaliation. Plaintiff contends that an action may be retaliatory even if otherwise lawful, and he clearly alleged that Defendants participated in making the detrimental transfer to the far harsher environment with the intent of retaliating against him for reporting the ongoing abuse at Nixon. Plaintiff contends that qualified immunity is not available because the right to be free from such retaliation was clearly established.

Magistrate Judge Primomo concluded that the motion to dismiss this claim should be denied. He agreed that, while it is unclear precisely when E.H.C. was transferred and later detained at the county jail, it was clearly after he reported the abuse, and even if Defendants could legally transfer him and detain him, such action taken with the intent to retaliate may nevertheless be actionable. Thus, Magistrate Judge Primomo concluded that, liberally construed, Plaintiff's allegations stated a cause of action and qualified immunity should be denied.

Defendants filed objections, asserting that the Memorandum and Recommendation "glosses over serious deficiencies in" Plaintiff's retaliation claim. Defendants emphasize their position that the claim is defeated by Plaintiff's failure to allege facts supporting an inference of retaliatory motive, since he has alleged no facts establishing when or how any federal defendant could have

known that he made any reports of abuse. Defendants contend that the fact that E.H.C. was purportedly transferred to facilities with "far more restrictive and punishing conditions" does not permit an inference of retaliatory motive because the decisions made regarding E.H.C.'s placement could have been the result of proper motives. Further, Defendants argue that the fact that E.H.C. does not claim that he engaged in any "whistleblowing" between the time he arrived at the "staff-secure" facility and the time he was transferred to the "secure" facility lends further support to the conclusion that there was no retaliatory motive behind the placement decisions. With regard to E.H.C.'s detention at a county jail, Defendants state that they were never at liberty to set Plaintiff free and that it was not a simple matter to find a place for him to live following termination of his immigration proceedings. Thus, Defendants contend, the fact that it took two weeks to find E.H.C. a placement does not give rise to an inference of retaliation.

The elements of a claim under a retaliation theory are the plaintiff's invocation of "a specific constitutional right," the defendant's intent to retaliate against the plaintiff for his or her exercise of that right, a retaliatory adverse act, and causation, *i.e.*, "but for the retaliatory motive the complained of incident ... would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). Mere conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). The plaintiff must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). "The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" *Jones*, 188 F.3d at 325.

"An action motivated by retaliation for the exercise of a constitutionally protected right is

actionable, even if the act, when taken for a different reason, might have been legitimate." *Woods*, 60 F.3d at 1165. The situation of pretext, however, concerns the existence of retaliatory motivation, not causation. *Johnson v. Rodriguez*, 110 F.3d 299, 313 n.19 (5th Cir. 1997). Unless the complained-of action would not have taken place "but for" the retaliatory animus, then the retaliation claim has not been made out. *Id.*

Defendants argue that Plaintiff E.H.C. has alleged only facts "consistent with" retaliation and this is insufficient to state a claim under *Twombly*. In *Twombly*, the Supreme Court considered what a plaintiff must plead in order to state a claim under § 1 of the Sherman Act. The plaintiff had pled that the defendants engaged in parallel conduct, and thus, on information and belief, they had entered into a contract, combination or conspiracy to prevent competitive entry in their respective markets and had agreed not to compete. The Court noted that parallel conduct standing alone is insufficient to establish a Sherman Act violation because parallel conduct may be consistent with a conspiracy, but it may also be consistent with lawful conduct (independent parallelism). If all a plaintiff could prove was parallel conduct, the plaintiff would lose at later stages in the case. Thus, the complaint was deemed insufficient because it did not allege facts that, if true, provided a right to relief.

Defendants also rely on *E.E.O.C. v. Concentra Health Servs., Inc*, 496 F.3d 773, 777 (7th Cir. 2007), in which the Seventh Circuit concluded that the plaintiff had not adequately pled a Title VII retaliation claim. In that case, the EEOC brought an action on behalf of a former employee who claimed he was fired after he reported a sexual affair between his supervisor and another employee. The Seventh Circuit noted that, if the affair was consensual, the employee would not have a reasonable basis to believe the conduct unlawful, but he might if the affair was due to quid-pro-quo

sexual harassment. The court held that dismissal was "probably correct": "As the *Bell Atlantic* Court explained, it is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief by providing allegations that 'raise a right to relief above the speculative level.' Horn's report of a sexual affair is logically consistent with the possibility that the affair was caused by quid-pro-quo sexual harassment, but it does not suggest that possibility any more than money changing hands suggests robbery." *Id.* at 777 (citations omitted).

Defendants assert that, like *Twombly* and *Concentra*, Plaintiff E.H.C. had pled facts that, if true, could lead to an inference of retaliation or could lead to an equal inference of no retaliation, and thus he fails to plead a plausible right to relief. Those cases rest on the proposition that if all the plaintiff could prove was parallel conduct or a sexual affair, they could not recover at trial because those facts, standing alone, do not demonstrate liability. Thus, they must plead more than that to state a plausible right to relief. *Twombly* does not require a plaintiff alleging retaliation to prove retaliatory motive or causation at the pleading stage. Rather, it requires only that a plaintiff plead sufficient facts from which a factfinder may draw the necessary inferences.

Thus, the real issue is whether Plaintiff E.H.C. has alleged enough facts to permit an inference of intent to retaliate and a causal connection. In *Parker v. Carpenter*, 978 F.2d 190, 192 (5th Cir. 1992), the plaintiff, a pretrial detainee, alleged that after he had a verbal altercation with a jail officer, he was punished or retaliated against when he was transferred from the low-risk minimum security section to the overcrowded violent inmate section of the jail, and that this was a deviation from the common practice after a verbal altercation with jail personnel to simply be moved around within the minimum security section, not transferred to the violent offenders section. The Fifth Circuit held that this sufficiently stated a claim. In *Morris v. Powell*, 449 F.3d 682, 687 (5th

23

Cir. 2006), the court discussed *Parker*, stating, "We have held that transfer to a more dangerous section of the same prison is a sufficiently adverse retaliatory act to support a § 1983 claim. There is no doubt that transfer to a more dangerous prison as a penalty for the exercise of constitutional rights has the potential to deter the inmate from the future exercise of those rights." *Id.* (citation omitted). However, these cases were concerned with whether the act of transferring was sufficiently likely to deter the exercise of rights (*i.e.*, whether the retaliatory act was more than *de minimis*), and did not expressly consider whether the allegations permitted an inference of retaliatory motive.

In this case, Plaintiff pleads only that he complained of abuse by one set of defendants (Leal and perhaps others employed at the Nixon Facility), though he does not state to whom he reported the abuse or when, and that he was, some unspecified time later, transferred twice and then detained in county jail by a different set of defendants. Though Plaintiff pleads that the actions were taken with the intent to retaliate, Defendants correctly point out that this allegation is nothing more than a legal conclusion. Conclusory allegations of intent and causation are insufficient. *See Samford v. Staples*, 249 Fed. Appx. 1001 (5th Cir. 2009). There are no factual allegations concerning the temporal gap between these events,[9] whom Plaintiff reported to such that one might draw an inference regarding whether and how these Defendants might have become aware of the reports by E.H.C.,[10] or how each named Defendant was specifically involved in each alleged retaliatory act.

---

[9] *See Allen v. Thomas*, 388 F.3d 147, 150 (5th Cir. 2004) (finding that plaintiff stated a retaliation claim by pleading that "shortly after he submitted letters critical of the prison to the mail room for mailing, Thomas ordered Major to seize from his living quarters his word processor and radio, property which Allen had possessed for years and which he had registered with the prison"). *Cf. LeMaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007) (in the context of workplace retaliation, close timing between the protected action and the alleged retaliatory act may suggest a causal connection for retaliation).

[10] *Cf. Manning v. Chevron*, 332 F.3d 883-84 (5th Cir. 2003) (a plaintiff fails to make a prima facie case of retaliation when he fails to show that the person doing the alleged retaliatory act had knowledge of the protected activity).

A defendant's mere involvement in the alleged retaliatory act, without more, does not establish either retaliatory motive or causation. *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003).

There are few cases discussing what a plaintiff must plead to survive a motion to dismiss a retaliation claim after *Twombly*. The Fifth Circuit has stated in an unpublished opinion that "[r]etaliation may be inferred from the exercise of the protected right to complain followed by an adverse act." *Peters v. Quarterman*, 252 Fed. Appx. 705 (5th Cir. Oct. 31, 2007) (citing *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995); *Gibbs v. King*, 779 F.2d 1040, 1042 (5th Cir. 1986); and *Ruiz v. Estelle*, 679 F.2d 1115, 1153-55 (5th Cir.), *opinion amended in part and vacated in part on other grounds*, 688 F.2d 266 (5th Cir. 1982)). None of the cited cases, however, makes or supports such a general statement. Other cases indicate that something more is required to establish a link between the protected act and the alleged retaliation, such as temporal proximity, before the inference may be drawn. *See, e.g.*, *White v. Fox*, 294 Fed. Appx., 955 (5th Cir. 2008) (holding that a magistrate judge did not err in finding a retaliation claim frivolous when the plaintiff "did not offer any specific link between his legal activity and the disciplinary case which he received, beyond the fact that he engaged in legal activity and subsequently received the disciplinary case").[11] *But see Burnette v. Bureau of Prisons*, 277 Fed. Appx. 329, *332-33 (5th Cir. Dec. 10, 2007) (concluding that plaintiff had alleged enough facts to state a claim to relief that is plausible on its face by alleging that, in response to his objections regarding the addition of inmates to his cell, BOP staff retaliated by shutting off his water, canceling his recreation privileges, confiscating bedding and reading

---

[11]*See also Armenta v. Chatman*, Civ. A. No. 5:07-cv-178, 2009 WL 485002 (E.D. Tex. Feb. 26, 2009) (Magistrate Report and Recommendation) ("The fact that Armenta had previously filed grievances and complaints does not make any subsequent adverse act by prison officials retaliatory in nature; the mere fact that one incident precedes another is not proof of a causal connection. This is the logical fallacy of *post hoc ergo propter hoc* (after this, therefore on account of this).").

materials, and writing retaliatory and unwarranted incident reports against him). Thus, the case law does not offer clear guidance.

Plaintiff's current pleadings presume retaliatory intent merely from the fact that the alleged retaliation occurred sometime after the protected activity. The Court concludes that, even if that were sufficient to state a claim in some cases, it is insufficient to overcome qualified immunity on these facts, where the alleged retaliators are not the people who have been reported, making the motive for retaliation less clear, no link has been demonstrated between the protected activity and the alleged retaliation (such as temporal proximity or knowledge of the protected activity by the alleged retaliators), and the specific actions and involvement of each Defendant is not clear. Something more is required.

Plaintiff has sought leave to amend or file a statement of clarification should this Court find that he has not stated a claim. The Court finds that such leave should be granted, and thus the motion to dismiss is denied. without prejudice, at this time. Plaintiff is given leave to amend, and should provide facts either known to plaintiff or pled in conformance with the rules concerning whom Plaintiff reported to and when, when the alleged retaliatory acts occurred, and the role of each named Defendant. Though the Court has concluded that more is required, the cases indicate that Plaintiff's pleading burden is minimal, and the Court reiterates its conclusion that Plaintiff need not prove intent and causation at the pleading stage. Defendants may file a subsequent motion to dismiss based on the amended pleading. The Magistrate Judge's recommendation to deny the motion to dismiss this claim is accepted, though for different reasons.

### 3. Eighth Cause of Action

The Eighth Cause of Action is a *Bivens* claim for damages by Plaintiffs E.R.J. and P.A.S.G.

26

against Defendants Maggie Gaytan (not a movant herein), Jose Gonzalez, and James De La Cruz individually for violation of their First and Fifth Amendment rights to "an undisturbed attorney-client relationship and to full and free communications with their attorneys." Defendants asserted that, to the extent these Plaintiffs had any constitutional right to counsel in their immigration proceedings, it stemmed from the Fifth Amendment's guarantee of due process, not the First Amendment. They argue that "an alien suffers a violation of his or her right to counsel in immigration proceedings only when (1) he or she is denied an opportunity to obtain counsel or (2) the absence of counsel impinges on the fundamental fairness of the hearing, and there is substantial prejudice to the alien. *Mayers v. INS*. No. 95-60100, 1995 WL 696761 at *3 (5th Cir. Oct. 19, 1995)." Defendants assert that, because Plaintiffs do not allege that they suffered these harms, but only that they suffered emotional and physical distress, they have not established a due process violation.

Plaintiffs respond that, since the events set forth in this suit, "both E.R.J. and P.A.S.G. have been granted interim relief under the U-visa program as certified victims of crime. Their attorneys, despite the alleged interference, succeeded in mitigating the harms and obtaining relief for their clients through their own skills and hard work." Plaintiffs assert that they suffered personal harms, including confusion, anxiety, and other emotional distress as a result of the interference, and seek leave to amend their complaint to include their claims for personal damages in their Nineteenth Cause of Action for intentional infliction of emotional distress.

In their Sur-Reply, Plaintiffs again move this Court "for leave to amend to transfer such claims for damages to their cause of action for intentional infliction of emotional distress."

Magistrate Judge Primomo concludes that this claim should be dismissed because it fails to

establish a due process violation. Plaintiffs did not object to this recommendation, given that they have voluntarily ceded this claim. Accordingly, the recommendation to grant the motion to dismiss this claim against Gonzalez and De La Cruz is accepted.

Magistrate Judge Primomo concluded that although Plaintiffs sought leave of court to amend their complaint to include their claims for personal damages in the Nineteenth Cause of Action for intentional infliction of emotional distress, they "failed to set forth with particularity the grounds for the amendment" and thus the "Court need not rule on their 'request.'" MNR at 18 n.3 (citing *United States v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003)). In *United States v. Humana Health Plan*, the Fifth Circuit noted that Rule 15(a), governing leave to amend, applies where plaintiffs "expressly request" to amend even though their request "was not contained in a properly captioned motion paper." *Id.* A formal motion is not always required, so long as the requesting party has set forth with particularity the grounds for the amendment and the relief sought. *Id.* However, "a bare request in an opposition to a motion to dismiss-without any indication of the particular grounds on which the amendment is sought, cf. Fed.R.Civ.P. 7(b)-does not constitute a motion within the contemplation of Rule 15(a)." *Id.*

In their Response to the Motion to Dismiss, Plaintiffs asserted that they suffered personal harms resulting from the interference with their right to counsel and that they "seek leave of court to amend their complaint to include their claims for personal damages in their Nineteenth cause of action for the intentional infliction of emotional distress." The Court concludes that Plaintiffs expressly requested leave to amend and provided specific information regarding the grounds on which such an amendment should be permitted, namely, their theory that they suffered emotional distress, that these damages are more properly recovered via a state tort claim, and their concomitant

request to amend that cause of action accordingly. Accordingly, after considering the applicable factors under Rule 15 and *Foman v. Davis*, the Court concludes that Plaintiffs should be given leave to amend their Nineteenth Cause of Action as requested.

**a. Twentieth Cause of Action** – Insofar as Plaintiffs also assert a *Bivens* claim for interference with attorney client relations against Gonzalez in the Twentieth Cause of Action, that claim is also dismissed.[12]

### 4. Eleventh Cause of Action

The Eleventh Cause of Action is a *Bivens* claim by all Plaintiffs for damages against Defendants Marc Moore, Jose Gonzalez, James De La Cruz, Martha Newton, Maureen Dunn, and Susanna Ortiz-Ang individually for deprivation of property and liberty rights in violation of the Fifth Amendment.[13] The Second Amended Complaint alleges that the Defendants deprived Plaintiffs of protected property and liberty rights, created by the *Flores* agreement, "by knowingly and intentionally refusing and failing to halt the rampant physical/sexual abuses at the Nixon facility or to otherwise protect the Plaintiffs." Second Am. Compl. ¶239-243. As a result, Plaintiffs allege, "plaintiffs were deprived of the safe environment to which they were entitled, and suffered sexual and physical assaults during their detention at Nixon." *Id.* ¶ 244.

The *Flores* Agreement was the resolution of a class action on behalf of all unaccompanied

---

[12] *See* Individual Defendants' Motion to Dismiss at 19 n.15. Magistrate Judge Primomo did not expressly discuss this claim in the Memorandum and Recommendation. However, the legal basis for the Twentieth Cause of Action is not expressly stated, and to the extent it is a *Bivens* claim against Gonzalez, it overlaps with the Eighth Cause of Action *Bivens* claim against him, and should be dismissed for the same reasons.

[13] Plaintiffs also sought injunctive relief against Defendants in their personal and official capacities, but they agreed to voluntarily dismiss their request for injunctive relief.

minors.  The parties signed a final stipulated settlement agreement.  Paragraph 9 of the Agreement states that it "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the INS and shall supersede all previous INS policies that are inconsistent" with its terms. A minor is defined as any person under the age of eighteen who is detained in the legal custody of the INS.  The Agreement further required Defendant INS, "[w]ithin 120 days of the final district court approval" of the Agreement, to "initiate action to publish the relevant and substantive terms of this Agreement as a Service regulation."  The final regulations "shall not be inconsistent with the terms of this Agreement."  A December 12, 2001 Stipulation and Order set the termination date of the agreement as 45 days following the publication of final regulations implementing the agreement. It is undisputed that no such final regulations have been promulgated. The INS was also required to distribute to all field offices and sub-offices "instructions regarding the processing, treatment, and placement of juveniles," including "the provisions summarizing the terms of this Agreement."  The terms of the *Flores* Agreement became binding on ICE and ORR as successor organizations to the INS.  *Bunikyte v. Chertoff*, 2007 WL 1074070 at *2 (W.D. Tex. April 9, 2007) (citing paragraph 1 of the Agreement).

Defendants argue that the *Flores* Agreement provides no support for Plaintiffs' claims for three reasons.  First, Defendants argue that Plaintiffs cannot accept the "guarantees" set forth in the agreement without accepting the limitations it places on their enforcement, namely ¶ 24B's limited provision for judicial review.  Paragraph 24B provides that "[a]ny minor who disagrees with the INS's determination to place that minor in a particular type of facility, or who asserts that the licensed program in which he or she has been placed does not comply with the standards set forth in Exhibit 1 attached hereto, may seek judicial review in any United States District Court with

jurisdiction and venue over the matter to challenge that placement determination or to allege noncompliance with the standards set forth in Exhibit 1." Defendants argue that this provision allows minors in custody to compel enforcement of the agreement, not to sue for monetary damages for past breaches. Second, Defendants urge the Court to reject Plaintiffs' implicit suggestion that the agreement acts as an independent source of constitutional rights. Defendants argue that, without an independent constitutional violation, not even a violation of a federal regulation will strip an official of qualified immunity, and thus the same must hold true for a settlement agreement. Third, Defendants argue that even if the *Flores* Agreement can serve as an independent vehicle for the assertion of constitutional claims for damages, Plaintiffs still have not shown a violation of a clearly established rights because Defendants would not have been on notice that the agreement was in itself a source of constitutional rights. Thus, Defendants argue, qualified immunity bars this claim.

Plaintiffs argue that the *Flores* Agreement created a due process entitlement (a protected property or liberty interest) because the terms and conditions of the agreement currently serve as interim federal regulations, and the language of the agreement is mandatory with regard to the services and protections to be provided to unaccompanied minors. Plaintiffs argue that the *Flores* Agreement is the binding legal standard governing the treatment of unaccompanied minors, that its terms serve as de facto regulations, and its terms are mandatory. Plaintiffs argue that paragraph 24B does not restrict their right to bring a claim for damages, but rather simply authorizes other federal district courts to hear claims of non-compliance so that future class members would not have to litigate compliance issues in California. Rather, Plaintiffs point to paragraph 36, which states that "Nothing in this Agreement shall limit the rights, if any, ... for class members to exercise any independent rights they may otherwise have." Plaintiffs further assert that qualified immunity is

unavailable because the jurisprudence of entitlement theory is well settled.

Defendants reply that Plaintiffs have "identified no instance in which a court has allowed a *Bivens* claim to proceed on the theory that an individual federal employee violated a 'due process entitlement' created by 'interim federal regulations,'" and that even if the agreement amounts to de facto agency regulations with mandatory language, Plaintiffs have not demonstrated why the Court should take the "extraordinary step" of implying a *Bivens* remedy for its violation against a non-signatory. Plaintiffs state in their Sur-Reply that they do not argue that any violation of any federal regulation will constitute a constitutional violation, but that they had a protected property interest that was created by the *Flores* Agreement because it was mandatory and did not leave the actions in question to the discretion of the official. Thus, Plaintiffs state, they do not rely on the status of the agreement as de facto regulations, but on the fact that their property interests were secured by existing rules or understanding and thus are subject to due process protection. Further, Plaintiffs argue, Defendants were well aware of the *Flores* agreement and its terms, the law of due-process entitlements, and *Bivens*, and thus the law was clearly established for purposes of qualified immunity.

Magistrate Judge Primomo agreed with Defendants. He concluded that "the intended purpose of the agreement would appear to be to provide minors currently in custody a means of enforcing the terms of the *Flores* Agreement." He further noted that Plaintiffs cite no authority providing that a plaintiff can pursue a *Bivens* claims on the theory that the individual federal employee violated a due process entitlement created by interim federal regulations. Magistrate Judge Primomo relied on the similarities between Plaintiffs' claims and those in *Green v. McKaskle*, 788 F.2d 1116, 1121 (5th Cir. 1986), to conclude that Plaintiffs' claims must fail. In *Green*, the Fifth

Circuit held that remedial court orders per se, apart from independent constitutional grounds affirmed therein, cannot serve as a substantive basis for a damages claim for a violation of constitutional rights (under § 1983) because such orders do not create rights, privileges, or immunities secured by the Constitution and laws. *Id.* at 1123. Magistrate Judge Primomo further concluded that, even if there was a deprivation of a protected interest in violation of due process, it was not clearly established that the *Flores* Agreement would create a due process entitlement such that a reasonable official would have known he was violating any established constitutional rights. Thus, Magistrate Judge Primomo concluded that the Individual Defendants are entitled to qualified immunity.

Plaintiffs object to Magistrate Judge Primomo's conclusion, arguing that "[f]ormally accepted and binding interim regulations such as those in question here are ... more than adequate to create an entitlement" and that damages claims are appropriate for a violation of due process. Plaintiffs contend that Magistrate Judge Primomo improperly relied on *Green v. McKaskle* because that case provided "none of the analysis discussed above necessary to establish a due process entitlement" and because it is distinguishable on its facts. Plaintiffs assert that they do not base their entitlement claim on the settlement alone, but on the fact that the United States "voluntarily elevated the terms and requirements of the *Flores* settlement to the status of interim regulations, which were fully and formally binding during the relevant time period here." Plaintiffs assert that "the requirements of the *Flores* Agreement created a constitutionally protected entitlement interest under the due process clause of the Fifth Amendment" and that "[o]nce Plaintiffs established that the services and protections required by the *Flores* Agreement comprised an entitlement, or liberty/property interest, then all of the protections of the due process clause became fully applicable.

33

This includes both procedural as well as substantive due process."

Magistrate Judge Primomo concluded, and all parties appear to agree, that the *Flores* settlement agreement, which is in effect a remedial decree, does not in and of itself confer any constitutional rights upon the Plaintiffs. Fifth Circuit case law is clear that remedial decrees confer no such rights.

In *Green v. McKaskle*, 788 F.2d 1166 (5th Cir. 1988), the district court stated that, for purposes of establishing liability for damages under § 1983, "*Ruiz* law" would include not only the conclusions of law set forth in its opinion in *Ruiz v. Estelle*, 503 F.Supp. 1265, but it would also include the provisions of the *Ruiz* remedial decree and all stipulations, plans and court orders subsequently filed. The Fifth Circuit rejected this conclusion:

> the Ruiz court was incorrect in stating that its remedial decree and all subsequent stipulations, plans and court orders could serve as a basis for a § 1983 damage claim. No doubt the Ruiz court's delineation of constitutional rights, as affirmed by this court or unchallenged by the parties, is important and may be grounds for § 1983 liability in the Ruiz court or other courts. Furthermore, the Ruiz order may bear on a qualified immunity defense. A remedial decree affirmed on appeal might be important for purposes of providing notice to prison officials of clearly established rights. But remedial court orders per se, apart from independent constitutional grounds affirmed there, cannot serve as a substantive basis for a § 1983 claim for damages because such orders do not create "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983 (1982).

*Id.* at 1122-23 (citations omitted). Further, the court held, "remedial decrees are the means by which unconstitutional conditions are corrected but that they do not create or enlarge constitutional rights." *Id.* at 1123. And, remedial decrees do not create "rights ... secured by the ... laws," as stated in § 1983 sufficient to serve as a basis for liability under § 1983 because (1) § 1983 provides a cause of action only for deprivations of constitutional or statutory rights and (2) the same rationale used by the Supreme Court to determine which federal statutes contain rights actionable under § 1983 also

suggests that court orders do not establish rights actionable under § 1983. With regard to this second reason, the court noted that when there are sufficient remedial devices available, such as contempt power, there is no need to allow court orders to serve as the basis of § 1983 liability. The court went on to discuss the disadvantages of allowing a remedial decree to serve as the basis for § 1983 liability, including that (1) remedial decrees are negotiated by the parties and subject to change; (2) remedial decrees may go beyond constitutional requirements, but allowing a prisoner to bring a damage claim under § 1983, in addition to contempt proceedings, for a violation of a court order approving stipulations and plans would discourage prison officials from agreeing to such benefits; (3) if individual prisoners can seek damages for violations of every detail of a remedial decree, compliance would be deterred by the hopelessness of defendants' position; and (4) allowing remedial orders, which can be long, complex, and detailed, to serve as a basis for § 1983 liability would raise serious problems regarding the ability to give notice to potential defendants preparing themselves conscientiously for the shelter of qualified immunity.

In *Galloway v. State of La.*, 817 F.2d 1154 (5th Cir. 1987), the court rejected a section 1983 claim by an injured prison guard based on violation of a court order that required three guards. Relying on *Green*, the court reasoned: "there is an important difference between constitutional rights, and remedies enforcing those rights. As this court stated just recently, although 'remedial decrees are the means by which unconstitutional conditions are corrected ... they do not create or enlarge constitutional rights.' Nor do judicial decrees create rights secured by laws within the meaning of section 1983. Therefore, 'a remedial court order, standing alone, does not serve as the basis for § 1983 liability.'" *Id.* at 1157.

The Fifth Circuit reiterated that a consent decree does not create rights secured by the laws

within the meaning of § 1983 in an unpublished opinion in 1995. *Connall v. Collins*, 71 F.3d 875 (5th Cir. 1995). By analogy, violations of the *Flores* Agreement, standing alone, cannot support a *Bivens* action.

Plaintiffs do not take issue with this conclusion. Rather, they argue that, although it is a remedial decree, the *Flores* Agreement was elevated to the status of interim federal regulation[14] with the consent of the INS, and it created protected liberty and property interests insofar as it included mandatory language that did not allow for the exercise of discretion. Plaintiffs reason that such a violation of due process would be an independent constitutional violation, and thus a remedy for such a violation is not precluded by *Green* and its progeny.

"To have a property interest in a benefit, a person ... must have more than a unilateral expectation of it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Property interests "are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* To determine whether statutes or regulations create a protected property interest, we must ask whether they place "substantive limitations on official discretion." *Ridgely v. FEMA*, 512 F.3d 727, 735 (5th Cir. 2008) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)). In determining whether statutes and regulations limit official discretion, the Supreme Court has explained that we are to look for "'explicitly mandatory language,' *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Ridgely*, 512 F.3d at 735-36 (quoting *Ky. Dep't of Correction v. Thompson*, 490 U.S. 454, 463 (1989)); *Gibbs*

---

[14] Plaintiffs do not contend that the violation of a federal regulation is itself actionable under *Bivens*; rather, they argue that when a federal regulation is couched in terms that create an entitlement, that entitlement is subject to due process protections.

*v. King*, 779 F.2d 1040, 1044 (5th Cir. 1986) ("[T]he creation of procedural guidelines to channel the decision-making of prison officials" without more does not create a protected liberty interest, but "requiring that certain procedures 'shall,' 'will,' or 'must' be employed" creates a liberty interest.)(quoting *Hewitt v. Helms*, 459 U.S. 460, 471-72 (1983)).[15]

The Court thus turns to whether Plaintiffs have alleged that they were deprived of any entitlement established by the *Flores* Agreement. The Agreement provides that "[t]he INS shall place each detained minor in the least restrictive setting appropriate to the minor's age and special needs, provided that such setting is consistent with its interests to ensure the minor's timely appearance before the INS and the immigration courts and to protect the minor's well-being and that of others." ¶ 11. "Following arrest, the INS shall hold minors in facilities that are safe and sanitary and that are consistent with the INS's concern for the particular vulnerability of minors." ¶ 12. "Facilities will provide access to toilets and sinks, drinking water and food as appropriate, medical assistance if the minor is in need of emergency services, adequate temperature control and ventilation, adequate supervision to protect minors from others, and contact with family members who were arrested with the minor." ¶ 12.A. "In any case in which the INS does not release a minor ..., the minor shall remain in INS legal custody." ¶ 19. "[S]uch minor shall be placed temporarily in a licensed program until such time as release can be effected in accordance with Paragraph 14 above or until the minor's immigration proceedings are concluded, whichever occurs earlier." *Id.* A licensed program is defined as "any program, agency or organization that is licensed by an

---

[15] It is also possible for a legitimate claim of entitlement to arise from "rules or understandings" created by an agency's policies or practices, even in the absence of explicitly mandatory statutory or regulatory language. *Ridgely*, 512 F.3d at 739 (citing *Perry v. Sinderman*, 408 U.S. 593, 601-02 (1972)). Plaintiffs rely solely on the *Flores* Agreement for their entitlement claim.

appropriate State agency to provide residential, group, or foster care services for dependent children, including a program operating group homes, foster homes, or facilities for special needs minors." ¶ 6. A licensed program must also meet those standards for licensed programs set forth in Exhibit 1 to the Agreement. *Id.* Exhibit 1 lists "minimum standards for licensed programs," including: "Program rules and discipline standards shall be formulated with consideration for the range of ages and maturity in the program and shall be culturally sensitive to the needs of alien minors. Minors shall not be subjected to corporal punishment, humiliation, mental abuse, or punitive interference with the daily functions of living, such as eating or sleeping. Any sanctions employed shall not: (1) adversely affect either a minor's health, or physical or psychological well-being; or (2) deny minors regular meals, sufficient sleep, exercise, medical care, correspondence privileges, or legal assistance." Ex. 1 ¶ Exhibit 1 also states that the licensed program must provide "[a] reasonable right to privacy, which shall include the right to: (a) wear his or her own clothes, when available; (b) retain a private space in the residential facility, group or foster home for the storage of personal belongings; (c) talk privately on the phone, as permitted by the house rules and regulations; (d) visit privately with guests, as permitted by the house rules and regulations; and (3) receive and send uncensored mail unless there is a reasonable belief that the mail contains contraband." Exhibit 1 ¶ A.12.

Certain minors, including those deemed to be an escape-risk, may be placed in more secure facilities. "Any minor who disagrees with the INS's determination to place that minor in a particular type of facility, or who asserts that the licensed program in which he or she has been placed does not comply with the standards set forth in Exhibit 1 attached hereto, may seek judicial review in any United States District Court with jurisdiction and venue over the matter to challenge that placement

determination or to allege noncompliance with the standards set forth in Exhibit 1." ¶ 24.B. "In order to permit judicial review of Defendants' placement decisions as provided in this Agreement, Defendants shall provide minors not placed in licensed programs with a notice of the reasons for housing the minor in a detention or medium security facility. With respect to placement decisions reviewed under this paragraph, the standard of review for the INS's exercise of discretion shall be the abuse of discretion standard of review. With respect to all other matters for which this paragraph provides judicial review, the standard of review shall be *de novo* review." ¶ 24.C.

Plaintiffs assert that the *Flores* Agreement is "clear and mandatory" and "leaves no room for discretion" and thus it establishes an entitlement to the "conditions, services, and protections set forth in the *Flores* Settlement Agreement." Plaintiffs point to a number of provisions that use the term that the "INS shall" provide certain benefits. Specifically relevant to their claim in the Eleventh Cause of Action, however, they point only to certain requirements of Exhibit 1, including that "the INS shall hold minors in facilities that are safe and sanitary and that are consistent with the INS' concerns for the particular vulnerability of minors," that minors shall be afforded "reasonable privacy rights" and that "minors shall not be subjected to corporal punishment, humiliation, mental abuse, or punitive interference."

After looking closely at the terms of the *Flores* Agreement, however, the Court concludes that Plaintiffs have failed to allege that they were deprived of a protected entitlement established by the *Flores* Agreement and, even if they were, Plaintiffs have failed to demonstrate that permitting a *Bivens* action for damages for such deprivation is appropriate. Further, even if Plaintiffs have established an entitlement protected by due process and a *Bivens* action is appropriate, Defendants would be entitled to qualified immunity because Plaintiffs' constitutional rights were not clearly

established at the time.

The entitlement that Plaintiffs claim in this case is to "safe conditions" and freedom from physical and sexual abuse. While the Agreement does contain some specific directives guiding official discretion in some circumstances, it speaks only in broad terms with regard to such "safe conditions."[16] It requires that the INS hold minors in "facilities that are safe and sanitary." Compared to other more specific directives in the Agreement, such as that minors are entitled to "daily outdoor activity, weather permitting, at least one hour per day or large muscle activity and one hour per day of structured leisure time activities," this statement is insufficiently detailed to create any entitlement. "Safe" does not provide fact-based, objective criteria, but rather involves intangible assessments and discretionary factors. *See Washington Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 36 (D.C. Cir. 1997). Further, the Agreement's intent was to create minimum guidelines and requirements regarding the minors' conditions of confinement to try to ensure their well being and safety. It does not purport to guarantee prevention of such episodic acts of abuse by program staff such as occurred here.

To the extent Plaintiffs appear to argue that the abuse was a deprivation of "privacy rights" guaranteed by the Agreement, the Agreement does not extend so far. The Agreement requires that licensed programs provide to each minor "[a] reasonable right to privacy, which shall include the

---

[16] The Agreement also provides that "[t]he INS shall place each detained minor in the least restrictive setting appropriate to the minor's age and special needs, provided that such setting is consistent with its interests to ensure the minor's timely appearance before the INS and the immigration courts and *to protect the minor's well-being* and that of others." ¶ 11 (emphasis added). The "entitlement" created by this language would be to placement in the least restrictive setting. However, as discussed *infra*, this provision does not create an entitlement because placement decisions are left to official discretion. Further, as with the other provisions relied on by Plaintiffs, this refers to general confinement conditions and does not purport to create an entitlement to freedom from episodic acts of abuse.

right to: (a) wear his or her own clothes, when available; (b) retain a private space in the residential facility, group or foster home for the storage of personal belongings; (c) talk privately on the phone, as permitted by the house rules and regulations; (d) visit privately with guests, as permitted by the house rules and regulations; and (3) receive and send uncensored mail unless there is a reasonable belief that the mail contains contraband." Again, this speaks to the general conditions of confinement, which are generally within the discretion and control of the licensed program through its policy decisions, not to protection from episodic acts, such as abuse or assault by program staff or other minors at the facility, that may result in a violation of privacy. The broad requirement of "safe" facilities in the Agreement does not create an entitlement to protection from all abuses that might possibly occur while minors are housed at the facility.

Similarly, paragraph C of Exhibit 1, cited by Plaintiffs, does not create a due process entitlement to be free from the abuse that occurred here. Paragraph C states that "[p]rogram rules and discipline standards shall be formulated with consideration for the range of ages and maturity in the program and shall be culturally sensitive to the needs of alien minors. Minors shall not be subjected to corporal punishment, humiliation, mental abuse, or punitive interference with the daily functions of living, such as eating or sleeping. Any sanctions employed shall not: (1) adversely affect either a minor's health, or physical or psychological well-being; or (2) deny minors regular meals, sufficient sleep, exercise, medical care, correspondence privileges, or legal assistance." Again, this provision dictates the permissible rules and discipline standards that may be adopted and utilized by a licensed program housing minors. There is no allegation that the Nixon Facility had program rules or discipline standards that violated this provision, and thus no deprivation of any entitlement.

The *Flores* Agreement's purpose was to establish minimum standards for licensed programs relating to conditions of confinement. Because Plaintiffs complain of episodic acts or omissions that were not contemplated by the *Flores* Agreement, they fail to demonstrate that they were deprived of any entitlement. Further, even if the Agreement does confer an entitlement to be free from the abuse that occurred here, the Agreement contemplates that such entitlements will be remedied via an action to enforce the terms of the Agreement rather than an action for damages. Plaintiffs cannot claim a legitimate expectation to benefits and remedies greater than those expressed in the Agreement.[17]

Further, the Court agrees with Magistrate Judge Primomo that, even if Plaintiffs had established that they were deprived of an entitlement created by the *Flores* Agreement, the Individual Defendants would be entitled to qualified immunity because the law was not clearly established in 2006 or 2007. The "clearly established" standard does not mean that officials' conduct is protected by qualified immunity unless "the very action in question has previously been held unlawful." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004). Neither do the facts of previous cases need to be "materially similar" to the case under consideration. *Id.* "Yet, at the same time, an official does not lose qualified immunity merely because a certain right is clearly established in the abstract." *Id.* "It is clearly established that the government may not deny due process or inflict cruel and unusual punishments, for example, but those abstract rules give officials little practical guidance as to the legality of particular conduct." *Id.* Thus, "[q]ualified immunity should not be denied unless

_____

[17] Paragraph 36, relied on by Plaintiffs, does not change this conclusion. It reserves class members' rights to exercise any independent rights they may otherwise have. While the Due Process Clause is an independent source of rights, the property and/or liberty rights Plaintiffs claim here are dependent on the Agreement. In contrast, Plaintiffs' *Bivens* claim directly under the Fifth Amendment asserted in the Fourth Cause of Action is an assertion of independent rights, and is the type of right preserved by paragraph 36.

the law is clear in the more particularized sense that reasonable officials should be 'on notice that their conduct is unlawful.'" *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 206, (2001)). The central concept is that of "fair warning": The law can be clearly established "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)). While Plaintiffs are correct that the law of due process entitlements and deprivations is clearly established, the Court finds that Defendants would not have been given "fair warning" that the *Flores* Agreement created a protected interest in "safe conditions" such that their conduct in failing to protect Plaintiffs from the abuses that occurred here would deprive Plaintiffs of such an entitlement to those "safe conditions."

Last, the Court notes that Plaintiffs have not demonstrated that a *Bivens* remedy for damages is appropriate on these facts. Plaintiffs have not cited any case demonstrating that a *Bivens* damages remedy (as opposed to a claim for injunctive or declaratory relief) should be afforded. Though Plaintiffs argue that damages remedies are common for due process violations under § 1983, and § 1983 and *Bivens* actions are coextensive, Plaintiffs fail to recognize that *Bivens* damages claims are not available for every constitutional violation by federal defendants. The Supreme Court recently discussed the criteria used to determine whether to imply a *Bivens* damages remedy in *Wilkie v. Robbins*, 551 U.S. 537 (2007):

> [O]ur consideration of a *Bivens* request follows a familiar sequence, and on the assumption that a constitutionally recognized interest is adversely affected by the actions of federal employees, the decision whether to recognize a *Bivens* remedy may require two steps. In the first place, there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages. But even in the absence of an alternative, a *Bivens* remedy is a subject of judgment:

"the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation.

With regard to the "mandatory" language concerning the conditions of confinement contained in the Agreement, Plaintiffs are given an express means to enforce the Agreement through judicial review. The fact that Plaintiffs' theory would mean that any provision couched in mandatory terms in the Agreement, such as the requirement that Plaintiffs be allowed to wear their own clothes, could give rise to a *Bivens* damages claim, even though the Agreement provides a means for enforcement of its terms, counsels against recognizing such a claim. In addition, the same reasons listed by the Fifth Circuit in *Green v. McKaskle*, listed above, counsel against permitting the claim in this case. Moreover, Plaintiffs have an available remedy to redress the abuses that occurred here – their *Bivens* action directly under the Fifth Amendment (Fourth Cause of Action). Implying a second, duplicative *Bivens* remedy based on an entitlement to "safe conditions" under such facts is not warranted.

For all these reasons, the Court accepts Magistrate Judge Primomo's recommendation to dismiss the Eleventh Cause of Action.

## 5. Seventh Cause of Action

In the Seventh Cause of Action, Plaintiff W.O.G. brings a *Bivens* claim for damages against Defendant James Orr, an ICE official and Assistant Officer in Charge of the South Texas Detention Complex, in his individual capacity for violation of his Fifth Amendment rights based on his detention in an adult facility despite being a minor. Plaintiff's Second Amended Complaint alleges that Plaintiff W.O.G. "had a constitutional right, as a minor, to be placed in the appropriate facility for unaccompanied minors, pursuant to the Fifth Amendment" and that Defendant Orr "violated Plaintiff's constitutional rights by keeping him in an adult facility, despite actual knowledge that

44

Plaintiff was only 15 years old." Second Am. Compl. ¶¶ 210-11. Plaintiff alleges that he was apprehended in August 2006 and "unlawfully placed in a facility for adults." *Id.* ¶ 80. "Plaintiff W.O.G.'s legal representative and others repeatedly notified Defendant James Orr that Plaintiff W.O.G. was only fifteen years old. Defendant Orr nevertheless continued to detain Plaintiff in an adult facility for approximately one month." *Id.* ¶ 81. "Defendant Orr knowingly, intentionally, and/ or with willful indifference and/or recklessly and/or negligently refused and failed to ensure that unaccompanied minors, including W.O.G. were not detained in an adult facility." *Id.* ¶ 140. Plaintiff further alleges that, "[a]s a result of such violations, Plaintiff suffered mental and physical harms." *Id.* ¶ 212. Defendant Orr moves to dismiss this claim or, in the alternative, for summary judgment.

Defendant Orr argues that this claim fails because Plaintiff W.O.G. has no constitutional right not to be placed in an adult facility, and even if such a right existed, it was not clearly established in the Fifth Circuit at the time of the events alleged in the Complaint. Rather, Orr argues, the Fifth Circuit had upheld a district court decision allowing officials to detain juveniles awaiting delinquency hearings in an adult facility despite Fifth and Eighth Amendment challenges by their parents. Orr also asserts that "[n]umerous courts have found that the Constitution contains no absolute prohibition on the placement of juveniles in adult correctional facilities." Motion at 18 (citing *Watts v. Hadden*, 651 F.2d 1354, 1365 (10th Cir. 1981) and *Murray v. Owens*, 465 F.2d 289 (2d Cir. 1972)). Orr also moves for summary judgment on the basis that his actions were objectively reasonable and he is thus entitled to qualified immunity.

Plaintiff W.O.G. responds that he had a constitutionally protected interest in receiving the conditions and protections of the *Flores* agreement, and thus he has stated a *Bivens* claim. Plaintiff

45

further contends that summary judgment is inappropriate on this claim because Plaintiff requires further discovery to rebut the motion, and the "vast majority" of the necessary controverting information remains exclusively within Defendants' control, such as the scope of Orr's authority or discretion to promptly transfer W.O.G. to a juvenile facility. Plaintiff therefore requests a continuance under Rule 56(f).

Magistrate Judge Primomo found that this claim should be dismissed because W.O.G.'s detention in an adult facility is not a constitutional violation and even if it is, the law was not clearly established at the time of the action. Magistrate Judge Primimo also concluded that the *Flores* Agreement did not create any protected entitlements. Plaintiff W.O.G. objects to this conclusion and argues that Magistrate Judge Primomo erred because the express terms of the *Flores* Agreement (¶ 12A) required Orr to promptly transfer Plaintiff to a *Flores* facility for unaccompanied minors. Further, Plaintiff argues, the cases cited by Magistrate Judge Primomo are distinguishable because they involved convicted criminal detainees and W.O.G., unlike the claimants in the cited cases, had a clear right to immediate placement in a *Flores* facility.

Plaintiff is correct that the cases cited by Magistrate Judge Primomo holding that convicted inmates have no expectation of incarceration in any particular institution are distinguishable because that holding is premised on the notion that a conviction submits the inmate to incarceration at any of the government's facilities, and Plaintiff was not convicted of any crime. *See Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983) (noting that the conviction sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons). However, Plaintiff points to no authority establishing that the Fifth Amendment itself confers a right on a juvenile immigration detainee to be detained in a juvenile facility and not an adult facility. Thus,

46

even if the Fifth Amendment does confer such a right and W.O.G.'s placement in an adult facility were a violation of that right, that right was not clearly established in 2006, and Orr would be entitled to qualified immunity.[18]

Perhaps realizing this, W.O.G. appears to alter the claim somewhat from that stated in the Second Amended Complaint, and contends that his placement in an adult facility deprived him of a protected liberty interest, created by the *Flores* Agreement, in being housed in an appropriate juvenile facility. Admittedly, the language of the *Flores* Agreement concerning placement of minors is more specific than the requirement for "safe conditions." However, it provides for judicial review of placement decisions for "abuse of discretion," indicating an intent to vest discretion in the officials making placement decisions. Thus, it does not establish a protected entitlement. Further, even if it did, this Court has already concluded that the law was not clearly established at the time such that qualified immunity would be appropriate, and that implying a *Bivens* damages remedy for violations of the terms of the Flores Agreement is not warranted. Accordingly, the Court accepts the recommendation to dismiss this claim and to dismiss as moot Defendant Orr's motion for partial summary judgment on this claim.

**D. Issues reviewed for plain error**

Those portions of the Memorandum and Recommendation that have not been objected to are reviewed for plain error.

### 1. Tenth Cause of Action

This claim is by all Plaintiffs against all the Individual Defendants except Orr for Injunctive

---

[18] As noted previously, the Fifth Circuit has held that immigration detainees are akin to pretrial detainees. Pretrial detainees may not be punished through the use of preconviction holding conditions. Plaintiff does not argue that his detention in an adult facility amounted to punishment.

relief.  Plaintiffs agreed to voluntarily dismiss this claim.

### 2. Dismissal of certain Individual Defendants

Magistrate Judge Primomo further recommended that Individual Federal Defendants Ortiz-Ang, Newton, and Moore should be dismissed.  Plaintiffs did not object to this recommendation. Newton and Moore were named in their individual capacities only in the Tenth and Eleventh Causes of Action, which are now dismissed.  Ortiz-Ang was not named specifically in any *Bivens* cause of action.  Accordingly, to the extent Plaintiffs made allegations against Ortiz-Ang in the factual predicate but failed to name her in her individual capacity in any Cause of Action, the Court accepts the recommendation to dismiss her in her individual capacity.  Further, because no claims remain against Moore and Newton in their individual capacities, they are dismissed.

### Conclusion

The Court ACCEPTS the Magistrate Judge's recommendation.

The Individual Defendants' Motion to Dismiss, docket no. 63, is GRANTED IN PART and DENIED IN PART.

The Motion for Partial Summary Judgment (docket no. 63) is DISMISSED AS MOOT.

The Motion to DISMISS is GRANTED as follows:

Plaintiffs' claims under the Eighth Amendment against the federal defendants in their individual capacities, which are raised in the Fourth, Fifth,  and Seventh Causes of Action, have been voluntarily withdrawn, and are thus DISMISSED.

Plaintiffs' claims for injunctive relief have also been withdrawn, and thus all claims for injunctive relief asserted against the Individual Federal Defendants in their individual capacities are DISMISSED WITHOUT PREJUDICE.

Plaintiff's Seventh, Eighth, and Eleventh Causes of Action asserted against the Individual Federal Defendants in their individual capacities are DISMISSED. Plaintiff is granted leave to amend the Nineteenth Cause of Action for intentional infliction of emotional distress to include claims against Gonzalez and De La Cruz related to the alleged interference with attorney-client relations.

To the extent the Twentieth Cause of Action includes a *Bivens* claim against Gonzalez in his individual capacity, it is DISMISSED.

All claims against Defendants Susanna Ortiz-Ang, Marc Moore, and Martha Newton in their individual capacities are DISMISSED.

The Motion to Dismiss is DENIED with regard to the Fourth and Fifth Causes of Action. However, Plaintiff E.H.C. must replead the Fifth Cause of Action, and Defendants may move to dismiss after Plaintiff files the amended complaint.

It is so ORDERED.

SIGNED this 30th day of March, 2009.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE