UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DAVID WALDING, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| VS. | ) | Civil Action No: SA-08-CA-124-XR |
| | ) | |
| UNITED STATES OF AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

On this date, the Court considered the Magistrate Judge's Memorandum and Recommendation on the United States' Motion to Dismiss and Motion for Partial Summary Judgment (docket no. 94) and the objections thereto.

**I. Background**

The Second Amended Complaint (docket no. 48) is the live pleading in this case. Plaintiffs are twelve young men born in Central America who were detained in the United States by federal agents as undocumented and placed in federal custody pending their immigration court proceedings. Am. Compl. ¶ 1. Each of the Plaintiffs was a minor at the time of his detention, and each was placed at the Away From Home, Inc. ("AFH") facility located in Nixon, Texas ("the Nixon Facility"), which contracted with the federal government to house unaccompanied undocumented minors, to await the final adjudication of his immigration status. *Id.* Plaintiffs allege that they suffered "grave and repeated sexual, physical and emotional abuse" at the facility. *Id.* ¶ 2. Plaintiffs' Second Amended Complaint contains twenty causes of action against various Defendants.

## II. Analysis

### A.  Tenth and Eleventh Causes of Action and requests for injunctive relief

Defendant United States argues that Plaintiffs have no standing to pursue injunctive relief (sought in their Fifth, Tenth, and Eleventh Causes of Action) against the individual defendants in their official capacities because they have no threat of future harm.  In response, as they did previously, Plaintiffs stipulate to dismissal of their official-capacity claims for injunctive relief in their Fifth, Tenth, and Eleventh Causes of Action (docket no. 78 at 6-7).  Thus, because the individual-capacity claims asserted in the Tenth Cause of Action have also been dismissed, no claims remain in the Tenth Cause of Action.

The United States argues that Plaintiffs' request for damages in the Eleventh Cause of Action fails because the *Flores* settlement agreement contains no provision for damages and does not recognize a claim for past breaches.  In their Response, Plaintiffs clarify that damages are sought against the individual defendants only in their individual capacities.  Those claims are dismissed by separate order, and thus no claims remain in the Eleventh Cause of Action.

The Tenth and Eleventh Causes of Action are dismissed.  The request for injunctive relief asserted against the defendants in their official capacities contained in the Fifth Cause of Action is dismissed.

### B. Federal Tort Claims Act Causes of Action

The United States offers several challenges to the various Federal Tort Claims Act claims contained in the Twelfth through Sixteenth Causes of Action, arguing that this Court lacks subject matter jurisdiction.  Under the doctrine of sovereign immunity, the federal government cannot be sued in its capacity as a sovereign unless it consents to be sued.  *See United States v. Mitchell*, 463

U.S. 206, 212 (1983).  For the federal government to consent to be sued, Congress must waive

sovereign immunity by explicitly extending to federal courts subject-matter jurisdiction over a

specified cause of action. *Id.*  The FTCA waives sovereign immunity and allows private individuals

to sue the federal government for the torts of its employees by granting federal courts exclusive

subject-matter jurisdiction over

> civil actions on claims against the United States, for money damages ... for injury or
> loss of property, or personal injury or death caused by the negligent or wrongful act
> or omission of any employee of the Government while acting within the scope of his
> office or employment, under circumstances where the United States, if a private
> person, would be liable to the claimant in accordance with the law of the place where
> the act or omission occurred.

28 U.S.C. § 1346(b)(1).  However, the FTCA contains a number of exceptions to this waiver of

sovereign immunity, including the discretionary function exception and the contractor exception at

issue in this case.  In determining whether subject-matter jurisdiction exists, "[c]ourts must strictly

construe all waivers of the federal government's sovereign immunity, [resolving] all ambiguities in

favor of the sovereign." *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998).

**1. Twelfth and Thirteenth Causes of Action (Discretionary Function Exception)**

In the Twelfth Cause of Action, which will be referred to as the negligent oversight claim,

Plaintiffs assert a claim based on the negligent failure by Newton, Dunn, Ortiz-Ang, De La Cruz,

Gonzalez, Mungia, and Moore to ensure proper treatment, care, welfare, safety, and protection of

the minors detained at the Nixon Facility. Second Am. Compl. ¶ 250.  In the Thirteenth Cause of

Action, which will be referred to as the negligent selection and negligent training/supervision claims,

Plaintiffs assert a negligence claim based on Newton, Dunn, and Ortiz-Ang's negligence in

investigating, selecting, screening and contracting and/or awarding a grant to AFH to detain minors,

*id.* ¶ 257, as well as Newton, Dunn, Ortiz-Ang, De La Cruz, Gonzalez, Mungia, and Moore's negligence in training, supervising, monitoring, and controlling their employees, agents, and/or contractors at the Nixon Facility.

The United States asserts that these FTCA claims are barred by the discretionary function exception in 28 U.S.C. § 2680. Plaintiffs contend that, because the jurisdictional issues are inextricably intertwined with the merits of these claims, dismissal is premature without permitting Plaintiffs some discovery, and thus resolution of these issues should be deferred.

Magistrate Judge Primomo concluded that Plaintiffs have facially invoked the Court's jurisdiction with regard to the negligent oversight claim (Twelfth Cause of Action) and had articulated specific facts demonstrating a need for discovery, and thus the motion for summary judgment with regard to that claim should be denied. The United States has objected to the recommendation.

Magistrate Judge Primomo further recommended that the United States' motion be granted with regard to the negligent selection claim contained in the Thirteenth Cause of Action, finding that it was an exercise of discretion protected by the discretionary function exception.[1] Plaintiffs have objected.

---

[1] Though the Thirteenth Cause of Action contains two separate bases for liability – negligent selection (¶ 257) and negligent training/supervising (¶ 258), the United States expressly moved to dismiss only the negligent selection claim. Motion, docket no. 64, at 18. Magistrate Judge Primomo considered and made a recommendation only on the negligent selection claim. Accordingly, whether to dismiss the negligent training/supervising claim (¶ 258) is not technically before the Court on review of the Magistrate Judge's Report and Recommendation. However, because the issues applicable to the negligent training/supervising claim overlap with those in the Twelfth Cause of Action (negligent oversight), the court finds that its analysis of the Twelfth Cause of Action should also apply to the negligent training/supervising claim asserted in ¶ 258.

*a. The Discretionary Function Exception*

The discretionary function exception provides that liability under the FTCA does not apply to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The Supreme Court discussed the discretionary function exception in *United States v. Gaubert*, 499 U.S. 315 (1991):

> The exception covers only acts that are discretionary in nature, acts that "involv[e] an element of judgment or choice," and "it is the nature of the conduct, rather than the status of the actor" that governs whether the exception applies. The requirement of judgment or choice is not satisfied if a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," because "the employee has no rightful option but to adhere to the directive."
>
> Furthermore, even "assuming the challenged conduct involves an element of judgment," it remains to be decided "whether that judgment is of the kind that the discretionary function exception was designed to shield." Because the purpose of the exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort," when properly construed, the exception "protects only governmental actions and decisions based on considerations of public policy."

*Id.* at 322-23 (citations omitted). With regard to the violation of regulations, the *Gaubert* court stated:

> if a regulation mandates particular conduct, and the employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation. If the employee violates the mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy. On the other hand, if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations.

*Id.* at 324. Thus, "[f]or a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be

grounded in the policy of the regulatory regime." *Id.* at 324-25. "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.* at 325.

The Supreme Court has developed a two-step test to determine whether the discretionary-function exception applies. *St. Tammany Parish v. FEMA*, 556 F.3d 307, 323 (5th Cir. 2009). First, the court inquires whether the challenged actions were discretionary, or whether they were instead controlled by mandatory statutes or regulations – in other words, whether the conduct is a "matter of choice for the acting employee." *Id.* Second, if the conduct involves such discretion, the court must determine whether it is the kind of judgment that the discretionary function exception was designed to shield. *Id.* The exception was designed to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy and thus protects only governmental actions and decisions based on considerations of public policy. *Id.*

### b. Procedural Issues

The United States moves for summary judgment on the Twelfth and Thirteenth Causes of Action based on the discretionary function exception. The Fifth Circuit has explained the proper procedure for resolving the jurisdictional issue of application of the discretionary function exception in FTCA cases:

> This court has held that where a "challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case" under either Rule 12(b)(6) or Rule 56. In this case, however, the merits of the actual cause of action-state-law negligence-are irrelevant to our determination of whether § 1346(b)(1) granted the district court subject-matter jurisdiction over those negligence claims, or whether the discretionary function exception of § 2680(a) divested the district court of jurisdiction. *Ford v. Am. Motors Corp.*, 770 F.2d 465, 468 (5th Cir. 1985) (holding

that, where the discretionary function exception to the FTCA barred the plaintiffs' negligence claims, "[t]he merits and the jurisdictional issue were not so intermeshed as to prevent the separate consideration and decision of the jurisdiction question" and affirming the dismissal of the claims on Rule 12(b)(1) grounds); *see also Lively*, 870 F.2d at 297 (holding that negligence is not an element of the discretionary function exception to the FTCA). Therefore, the district court was correct to dismiss USACE's claims under a 12(b)(1) standard. *See Davis*, 961 F.2d at 56 n.4 (holding that dismissal on 12(b)(1) grounds was appropriate where the district court lacked subject-matter jurisdiction under the FTCA).

*Hix v. U.S. Army Corps. of Eng'rs*, 155 Fed. Appx. 121, 128 n.8 (5th Cir. 2005) (some citations omitted). "Therefore, because the discretionary function exception 'is premised on the notion that there is no jurisdiction to hear the claim as the United States has not waived sovereign immunity for that kind of suit, such defenses should be raised by a motion to dismiss for lack of subject matter jurisdiction rather than by a motion for summary judgment.'" *Id.*

The Court finds that the facts relating to the jurisdictional issue of the application of the discretionary function exception are not intertwined with the merits, and the jurisdictional issue can be resolved separately. Thus, *Hix* and other authority indicates that this issue is more properly resolved via a motion under Rule 12(b)(1) than a motion for summary judgment. *See Bank One Tex. v. United States*, 157 F.3d 397, 403 (5th Cir. 1998); *Broussard v. United States*, 989 F.2d 171, 177 (5th Cir. 1993) (per curiam); *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1157 (5th Cir. 1981); *see also Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (listing cases). The Court will therefore resolve the motion under Rule 12(b)(1).

In ruling on a motion under Rule 12(b)(1), the Court "has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *United States v.*

*Freeman*, 556 F.3d 326, 334 (5th Cir. 2009). When a motion to dismiss for lack of subject matter jurisdiction is based on the lack of jurisdiction on the face of the complaint, the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised – the court must consider the allegations in the plaintiff's complaint as true. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981).

When matter outside the complaint is the basis of the attack, Rule 12(b) provides that a motion to dismiss for failure to state a claim under Rule 12(b)(6) will be automatically converted into a motion for summary judgment if the court considers matters outside the pleadings, providing an additional safeguard for the plaintiff, for, in addition to having all his allegations taken as true, the trial court cannot grant the motion unless there is no genuine issue of material fact. *Id*. This protection is not, however, provided the plaintiff who faces dismissal for lack of subject matter jurisdiction. "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* at 412-13. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *Id.* at 413. Further, materials such as affidavits and regulations can be considered when relevant to the issue of jurisdiction. *Poindexter v. United States*, 777 F.2d 231 (5th Cir. 1985).

Plaintiffs cannot be denied an opportunity for discovery that is appropriate to the nature of the motion to dismiss. *Williamson*, 645 F.2d at 414. However, a party is not entitled to jurisdictional discovery unless the requested discovery is likely to produce the facts needed to withstand the Rule 12(b)(1) motion. *Freeman*, 556 F.3d at 341.

*c. Negligent Selection claim (contained in Thirteenth Cause of Action, ¶ 257)*

The United States asserts that the negligent selection claim is barred by the discretionary function exception. By statute, ORR is responsible for "identifying a sufficient number of qualified individuals, entities, and facilities to house unaccompanied alien children." 6 U.S.C. § 279(b)(1)(F).[2] However, the United States asserts that no statute, regulation, or agency policy specifically defines the term "qualified." Therefore, the United States argues, section 279 leaves the determination of whether an individual, entity, or facility is "qualified" to ORR's discretion. According to the United States, ORR chose to provide shelter care services through cooperative agreements awarded to non-governmental entities. The United States asserts that this system was used by INS when it was responsible for providing shelter care services to children, and when Congress transferred this responsibility to ORR, it encouraged the ORR Director to use the existing refugee children foster care system for this purpose.[3] The United States asserts that, to meet its obligation to provide shelter

---

[2] This statute also provides that ORR shall be responsible for coordinating and implementing the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status, ensuring that the interests of the child are considered in decisions and actions relating to the care and custody of an unaccompanied alien child; making placement determinations for all unaccompanied alien children who are in federal custody by reason of their immigration status; implementing the placement determinations; implementing policies with respect to the care and placement of unaccompanied alien children; and overseeing the infrastructure and personnel of facilities in which unaccompanied alien children reside. 6 U.S.C. § 279(b)(1).

[3] 6 U.S.C. § 279(b)(1)(G) gave ORR responsibility for "overseeing the infrastructure and personnel of facilities where unaccompanied alien children reside." 6 U.S.C. § 279(b)(3) provides, "In carrying out the duties described in paragraph (1)(G), the Director of the Office of Refugee Resettlement is encouraged to use the refugee children foster care system established pursuant to section 412(d) of the Immigration and Nationality Act (8 U.S.C. 1522(d)) for the placement of unaccompanied alien children." Subsection 412(d)(2)(B)(iii) of the INA states that "[i]n carrying out the Director's responsibilities under clause (ii) [placement of unaccompanied refugee children], the Director is authorized to enter into contracts with appropriate public or private nonprofit agencies under such conditions as the Director determines to be appropriate."

care services with the resources provided, ORR enters into contractual arrangements with non-governmental organizations in key areas of the United States where the largest numbers of these children are found. The United States asserts that ORR has not promulgated regulations regarding the advertising and award of cooperative agreements, but instead uses the U.S. Department of Health and Human Service's Awarding Agency Grants Administration Manual and the regulations at 45 C.F.R. Part 74 for general guidance.

According to the United States' evidence, AFH was one of five providers that applied in response to the 2006-2007 funding opportunity, which advertised the availability of funding for the provision of shelter care services to unaccompanied alien minors. Further, the evidence indicates that, consistent with the manual, three unbiased reviewers from outside HHS reviewed the applications and gave the highest score to AFH. ORR entered into a cooperative agreement with AFH on March 3, 2006.

The United States argues that the decision to enter into a cooperative agreement with a non-governmental entity and the selection of AFH as the recipient of the contract were products of the exercise of ORR's discretion and did not violate any identifiable statutes, regulations, policies, or directives. Further, the United States argues that the decision to enter into the cooperative agreement was both susceptible to and grounded in policy considerations because ORR makes a determination concerning how best to use limited economic resources to meet its mandate. The United States contends that courts repeatedly recognize that awarding a government contract to a non-governmental entity is inherently discretionary and is thus protected by the discretionary function exception. Further, the United States argues, a decision that ORR should not have entered into the cooperative agreement would be the type of judicial second-guessing of decisions grounded in policy

that the exception is designed to prevent.

Plaintiffs assert that discovery is needed to develop facts relevant to the discretionary function exception. Plaintiffs seek "complete, specific and detailed information about the Defendants' actions and omissions in selecting the Nixon facility," including policy manuals, protocols, guidelines, regulations, and similar materials to determine if such acts and omissions were in violation of any express policies. Plaintiffs also seek: (1) TDFPS records concerning AFH and its history of operating child care facilities; (2) AFH records reflecting complaints and neglect before the award of the cooperative agreement; (3) medical or police records indicating possible injury to a child caused by an employee of AFH or its predecessor; (4) limited depositions of the state and federal defendants, AFH, and other knowledgeable persons on the issue of AFH's history and qualifications and the selection process utilized by ORR; (5) personal histories, CV's, background checks, interviews notations, and related materials reflected qualifications of AFH's directors and staff; (6) manuals, policies, protocols, and other guidance materials relevant to such selection process, and any limits to the discretion of the decisionmaker; and (7) all documents involved in the application process resulting in the selection of AFH by ORR.

The Magistrate Judge noted that "[t]he decision to hire a contractor and the choice of contractor are generally policy-based decisions." Further, he noted that "plaintiffs admit that defendant had 'broad discretion with regard to establishing eligibility and selection criteria for awarding grants and/or entering into a cooperative agreement with child care facility operators such as [AFH]." Response docket no. 78 at 21. Magistrate Judge Primomo rejected Plaintiffs' argument that the defendants "did not have any discretion to ignore obvious indications that [AFH] would provide a dangerous environment for unaccompanied minors," based on the language of 28 U.S.C.

11

§ 2680(a), which expressly excludes any claim based on the performance of a discretionary function, "whether or not the discretion involved be abused." Accordingly, the Magistrate Judge concluded that the discretionary function exception barred Plaintiffs' negligent selection/contracting claim.

Defendant has made a factual attack on the existence of subject matter jurisdiction, and has provided a number of exhibits, including the affidavit of Ken Tota, the Chief of Operations of ORR, who signed the cooperative agreement with AFH. This evidence, discussed above, indicates that ORR and its officials exercised discretion in selecting AFH and that this decision involved policy considerations. The next inquiry is whether Plaintiffs are entitled to discovery to rebut that evidence.

Based on the case law, the Court must conclude that ORR's decision to enter into a cooperative agreement and its contracting with AFH was the type of discretionary decision that involves policy judgments as contemplated by the discretionary function exception. *Guile v. United States*, 422 F.3d 221, 231 (5th Cir. 2005) ("[A] decision to hire a contractor and the choice of contractor are policy-based discretionary decisions.") (citing *Williams v. United States*, 50 F.3d 299, 310 (4th Cir. 1995)).

In *Guile*, the Fifth Circuit held that the Army's decision to contract with a private healthcare corporation to provide psychiatric services for dependents and retirees was protected by the discretionary function exception. In *Williams*, the Fourth Circuit held that the United States' decision concerning which custodial company to contract with was protected by the discretionary function exception because such a decision involves exercising judgment based on considerations of policy, and the case law clearly establishes that the award of contracts falls within the ambit of the exception. *Williams*, 50 F.3d at 310. If the decision of which custodial contractor to hire is based on policy concerns, certainly decisions concerning appropriate facilities to be used to house

unaccompanied alien minors is based on such concerns. Even apart from these precedents, however, the Court concludes that the implementation of ORR's statutory discretion to make placement decisions involves administrative decisions grounded in social, economic, and political policy and is the type of decisionmaking protected by the discretionary function exception.

Thus, the only remaining question is whether ORR's conduct (and that of its employees) satisfies the first prong of the test – whether ORR or its employees exercised discretion. The United States has produced evidence that it does. Plaintiffs are entitled to discovery to rebut this evidence. *See Ford v. Am. Motor Co.*, 770 F.2d 465, 468 (5th Cir. 1985) (noting that plaintiffs were permitted to engage in discovery to develop facts relevant to the discretionary function exception). However, much of the discovery Plaintiffs request in addressing this issue is not directly relevant to whether ORR and its employees exercised discretion. Rather, they seek specific information about AFH and its history. While this may be relevant to the issue of whether ORR abused its discretion in its selection of AFH, it is not relevant to whether ORR and its employees exercised discretion in selecting AFH. If there were internal policies, for example, that required ORR employees to obtain certain information about potential contractors and discussed particular outcomes regarding the viability of a cooperative agreement depending on the contents of such information, that would be relevant to the issue of ORR's and its employees' discretion.

Plaintiffs do ask for some discovery that could be relevant to rebut Defendant's evidence. Specifically, they seek "manuals, policies, protocols, and other guidance materials relevant to such selection process, and any limits to the discretion of the decisionmaker." Plaintiffs also state that they need to obtain relevant handbooks, guidance, policies, protocols, advisory bulletins, and similar materials concerning the selection process. Sur-Reply docket no. 85 at 10. Defendants have

13

provided some such materials, but Plaintiffs are entitled to discovery to determine whether others exist to determine whether ORR's and its employees' discretion was curtailed or whether ORR or its employees violated any express policies. The Court will permit only this limited discovery. The motion to dismiss this claim is denied without prejudice to re-urging after Plaintiffs have completed this limited discovery.

### d. negligent oversight (Twelfth Cause of Action)

The United States asserts that the negligent oversight claim is also within the discretionary function exception. The United States asserts that ORR had discretion to decide how to monitor Nixon and followed its own policies governing the oversight of such facilities. Under 6 U.S.C. § 279, ORR is responsible for overseeing the infrastructure and personnel of facilities in which unaccompanied alien children reside and conducting investigations and inspections of facilities and other entities in which unaccompanied children reside. 6 U.S.C. § 279(b)(1)(G),(L). The United States argues that section 279 does not specify the type, frequency, or degree of ORR's oversight, thus leaving these decisions to ORR's discretion. The United States contends that the statute also leaves to ORR's discretion the specific parameters of its investigations and inspections of the facilities and other entities in which unaccompanied alien children reside. The United States asserts that ORR, in exercising its discretion, developed policies governing the oversight of facilities for unaccompanied alien children, and those policies were complied with in this case.

The United States asserts that ORR has not promulgated any regulations pursuant to 6 U.S.C. § 279, but has developed an internal Policy and Procedures Manual that provides guidance on the placement and monitoring of underage immigration detainees, and notes that the *Flores* Agreement also requires the monitoring of a care provider's compliance with the terms of the Agreement.

*Flores* Agreement at ¶ 28A. The United States notes that the ORR Manual provides that the ORR

Program Officer charged with supervising a particular cooperative agreement is required to conduct

on-site monitoring of the facility at least once a year and more frequently if necessary, but neither

the Manual nor the *Flores* Agreement specifies the conditions precedent to enhanced monitoring nor

the frequency of such monitoring. According to the "stipulation of undisputed facts" submitted by

the United States, the ORR project officer responsible for the Nixon Facility met the annual

monitoring requirement, and also conducted more frequent monitoring of quarterly program progress

reports and weekly statistical data submitted by AFH. Further, according to the statement of

undisputed facts, before September 2006, ORR oversaw the Nixon facility through statistical reports

to the project officer and periodic visits by a federal field specialist, and ORR staff reviewed reports

by the facility to monitor compliance with the cooperative agreement and followed up with facility

management as needed.

According to the United States' evidence, in September 2006, ORR received information

about an incident of child sexual abuse that had occurred in April 2006. AFH was required to report

this incident, but did not do so, in violation of the cooperative agreement. However, because this

was the first reported incident of its kind at the Nixon facility and the culpable AFH staff member

had resigned, ORR concluded it could work with the program to prevent this sort of failure in the

future. On October 18, 2007, ORR provided to AFH staff at the Nixon facility technical assistance

on reporting child abuse, including a review of Significant Incident Reports and the ORR Policies

and Procedures Manual. In November 2006, ORR became aware of an incident in which a Nixon

facility employee used excessive force on a child and that another employee had improperly

restrained another child during this incident. The TDFPS report on the incident noted that several

AFH employees were intoxicated. AFH reported the incident to ORR, but neglected to include details demonstrating the seriousness of what had occurred, including damage to the facility's property, methods of restraint, or alcohol consumption by the staff. The United States asserts that, in response, ORR conducted a series of conference calls and instructed AFH management to provide training to their staff on ORR policies and procedures, state requirements, and the shelter policy on abuse and neglect. ORR provided three more days of intensive technical assistance to AFH staff and management.

According to the United States' evidence, Belinda Leal's sexual assault of multiple male residents came to ORR's attention on February 10, 2007. On February 13, AFH placed Leal on indefinite suspension. She later pled guilty and was sentenced to seven years imprisonment. After learning of the allegations against Leal, ORR suspended new placements at the Nixon Facility and increased oversight and conducted unannounced visits. ORR field personnel and management interviewed staff, administrators, and residents and reviewed staffing patterns. ORR worked closely with the facility's training director and observed and supervised direct care staff throughout February. Between February 27 and March 7, ORR transferred all residents out of the facility. ORR ultimately determined it would not be safe to return children to the facility and terminated its cooperative agreement by letter dated June 25, 2007.

The United States argues that determining the extent and manner of its oversight of the facilities for unaccompanied minors was within ORR's discretion, and to the extent it developed policies that applied to the monitoring of the Nixon Facility, those policies were followed. Thus, the United States argues, the first element of the discretionary function test is satisfied. With regard to the second element, the United States argues that ORR's oversight was susceptible to and actually

16

involved policy considerations insofar as political and economic policy considerations are inherent in decisions made by federal agencies such as ORR concerning staffing levels. The United States asserts that ORR had approximately 1100 minors in its custody residing in 33 facilities in eight states, and exercised its discretion in allocating its limited resources in an economically feasible manner that would maximize the agency's ability to accomplish its objectives. The United States contends that ORR officials made discretionary determinations concerning the amount of resources to devote to monitoring each of the facilities for unaccompanied alien children, including Nixon, in an attempt to ensure that sufficient oversight of all of the facilities was accomplished within the constraints of the resources allocated to the agency. The United States argues that courts have repeatedly found that the degree of the government's oversight of a contractor, such as ORR's oversight of AFH, is the type of decision the discretionary function exception was intended to protect.

Plaintiffs argue that, while Defendants had discretion to plan a program for the care and shelter of unaccompanied minors, they had to comply with the Constitution, laws, and the *Flores* Agreement, and once faced with obvious and imminent dangers to the Plaintiffs and other children at Nixon, had no discretion or permissible policy choice to permit the rampant sexual and physical abuse of the minors. Plaintiffs submit a list of discovery they believe is required to respond to Defendant's motion.

The Court agrees with ORR that "[s]upervision of a contractor's work, including the degree of oversight to exercise, is inherently a discretionary function." *Guile*, 422 F.3d at 230. The United States has shown that ORR was given statutory responsibility to oversee the facilities housing unaccompanied minors. To the extent it was given discretion in determining how to carry out that

17

responsibility, its planning level decisions in this regard would involve social, economic, and political policy. *Gaubert*, 499 U.S. at 324. Further, its agents' discretionary decisions in implementing ORR's policies, even if an abuse of discretion, are presumptively protected. *Id.* ("When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion."); *Freeman*, 556 F.3d at 337-38 ("We therefore hold that the government's conduct under the NRP – even its failure to provide food, water, shelter, medical assistance, and transport to the Convention Center and to the Cloverleaf – qualifies under the ... discretionary function exception."). . Plaintiffs do not allege facts that would indicate that ORR's or ORR's agents' decisions were not grounded in policy, nor do they seek discovery that would create a factual dispute on this issue. *Compare id.* at 325 n.7 (noting that agent's negligent collision with another car, while discretionary, cannot be said to be based on the purposes of the regulatory regime).

Thus, the only issue that remains is whether ORR and its employees exercised discretion. In this regard, the Court agrees with Defendant that discovery should be limited to issues relevant to whether the it was within ORR's and its agents' discretion to determine the extent and oversight of the Nixon facility and whether, to the extent ORR developed policies that applied to the monitoring of the Nixon facility, those policies were followed by ORR and its employees. *See Guile*, 422 F.3d at 231 (noting that "[t]here was no evidence presented of a statute, regulation or policy giving specific direction as to any of these functions in a way that would make them non-discretionary"). The United States asserts that these issues can be sufficiently explored through limited discovery of ORR records, including manuals setting forth policy or guidance with respect

to the monitoring of the Nixon facility (including training requirements, which are relevant to the negligent training claim), plus any specific records related to Nixon's oversight. The Court concludes that the motion should be denied at this time, without prejudice to re-urging once Plaintiffs have completed this limited discovery.

### 2. Fourteenth Cause of Action (Independent Contractor Exception)

In their Fourteenth Cause of Action, Plaintiffs assert a negligence claim based on the conduct of Defendants AFH, Gaytan, Roe, and Moe, who Plaintiffs allege were acting as federal employees acting within the scope of their employment and under color of federal law. Specifically, Plaintiffs allege that Defendant AFH and its employees were performing an exclusive government function in detaining the minors on behalf of the United States, and that ICE and DUCS supervised and controlled all aspects of the conditions and operations at the Nixon Facility and treatment of the minors detained there. Plaintiffs allege that Defendants Gaytan, Roe, and Moe, Directors of the AFH facility, had the legal duty to ensure the health and safety of the minors detained at that facility, and negligently failed to screen, monitor, train, and supervise their employees, and were negligent in failing to enact and enforce policies and practices to protect the youth at the facility.

The United States moves to dismiss, contending that this claim is barred by the FTCA's contractor exception because Plaintiffs can assert no facts establishing that AFH was a federal entity or that is employees were acting as federal employees.

The FTCA's definition of "employee of the government" includes "officers or employees of any federal agency." 28 U.S.C. § 2671. It excludes "any contractor with the United States" from the definition of federal agency. *Id.* Thus, the United States is not generally liable for the torts of government contractors. *Alexander v. United States*, 605 F.2d 828, 833 (5th Cir. 1979). Since the

United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions, including the independent contractor exception, to such waiver. *See Dalehite v. United States*, 346 U.S. 15, 30-31 (1953).

A critical element in distinguishing an agency from a contractor is the power of the federal government "to control the detailed physical performance of the contractor." *Orleans v. United States*, 425 U.S. 807, 814 (1976) (quoting *Logue v. United States*, 412 U.S. 521, 528 (1973)). In *Orleans*, the Supreme Court discussed its prior decision in *Logue*:

> In *Logue* this Court held that employees of a county jail that housed federal prisoners pursuant to a contract with the Federal Bureau of Prisons were not federal employees or employees of a federal agency; thus, the United States was not liable for their torts. Although the contract required the county jail to comply with Bureau of Prisons' rules and regulations prescribing standards of treatment, and although the United States reserved rights of inspection to enter the jail to determine its compliance with the contract, the contract did not authorize the United States to physically supervise the jail's employees. In short it could take action to compel compliance with federal standards, but it did not supervise operations.

*Id.* at 814-15. Thus, the Court stated, the question is not whether the contracting agency receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government. *Id.* at 815. The Court added that the applicability of regulations that "fix specific and precise conditions to implement federal objectives ... [does] not convert the acts of ... state governmental bodies into federal governmental acts." *Id.* at 816 (footnote omitted).

Plaintiffs have alleged a claim that is facially outside the exception. The United States has raised a factual challenge to the application of the exception. The United States notes that, through the cooperative agreement, ORR required AFH to operate the Nixon Facility in compliance with all applicable state licensing requirements, ORR policies and procedures, and the minimum standards

for licensing programs established by the *Flores* Agreement. Further, Article III of the agreement, which set out the responsibilities of ORR, provided for ORR's "substantial[] involve[ment] in the programmatic development and ongoing activities proposed and agreed upon" in the cooperative agreement. ORR was also responsible for "monitor[ing] and evaluat[ing] the provision of service," and "providing consultation and guidance regarding programmatic issues or concerns as well as technical assistance on ORR's policies and procedures."

The United States points out, however, that ORR was only required to conduct on-site monitoring once a year, and to conduct off-site monitoring at more frequent, yet unspecified, intervals. Further, the United States asserts, the agreement required AFH to ensure that minors "follow an integrated and structured daily routine" including eighteen core program services and nine supplemental services, but left the design and implementation of these services to AFH. Further, the United States asserts, AFH staff were required to conduct proper background investigations on its staff in compliance with state licensing requirements and ORR/DUCS policies and procedures, and ORR had no right under the cooperative agreement to terminate, direct, or interfere with the employment of any AFH staff. The United States argues that nothing in the cooperative agreement gives ORR the power to control the details and means by which the goals of the agreement were accomplished.

Plaintiffs argue that they need full discovery on this issue in order to respond because the issue will require "consideration of a diverse and detailed factual record." Plaintiffs argue that resolution of this issue does not turn solely on the terms of the cooperative agreement, but on "numerous other factors as well, reflecting the day-to-day realities of the relationship." Plaintiffs cite to the factors listed in the Restatement (Second) of Agency § 220(2) and comment h and the

factors listed by the Fifth Circuit in the context of labor cases. Docket no. 78 at 10 (listing factors).

Plaintiffs assert that, on information and belief, discovery will permit Plaintiffs to show a number of facts supporting day-to-day control, including: (1) the government's right to make "recommendations" to the facility staff in the cooperative agreement was in reality a right to give orders regarding the day-to-day conduct of affairs, and the facility's failure to comply would result in termination of the agreement; (2) the staff was required to obtain authorization for many basic aspects of day-to-day operations, and this involved frequent communication with government agents, including defendants, and failure to obtain authorization would result in termination of the agreement; (3) federal project officer's duties included the supervision of daily operations at the Nixon facility, and all parties understood such officer to have full rights of control over such daily operations; (4) the government controlled all aspects of the federal funding with regard to the facility; and (5) federal Defendants had great control and authority over personnel decisions at the facility, had the right to control the medical and educational needs and disciplinary treatment of the children, and had control over and actually owned most of the equipment utilized at the facility.[4]

Plaintiffs also refer to the detailed requests contained in their Motion for Continuance (docket no. 72), which include: (1) telephone records from January 1, 2006 to April 27, 2007 indicating communication between Nixon facility staff and ORR; (2) records of all in-person visits to the Nixon facility by any ORR employees during that same period; (3) records of all meetings between facility staff and ORR beyond those described in number 2; (4) correspondence between facility staff and ORR; (5) records reflecting contents of communications between ORR and facility staff described in one through three; and (6) limited depositions of ORR, TDFPS, and AFH defendants and staff on

_____

[4] Plaintiffs listed several other items as well.

the issue of federal control and supervision of the facility.

Magistrate Judge Primomo concluded that "[r]eview of plaintiffs' second amended complaint fails to reveal facts suggesting that the individual federal defendants supervised the day-to-day operations of the Nixon facility. In fact, their allegations suggest the contrary, *i.e.*, that defendants failed to carry out their legal duties to ensure the proper treatment, care, welfare, safety and protection of the minors detained at the Nixon facility." MNR docket no. 94 at 9-10. Magistrate Judge Primomo noted that Plaintiffs allege that ICE and DUCS supervised and controlled all aspects of the conditions and operations at the Nixon facilities and treatment of the unaccompanied minors, but offered no facts to support that conclusion, and that Plaintiffs offer no facts in their briefing suggesting that any federal defendant exercised day-to-day supervision over the facility or AFH employees. Thus, Magistrate Judge Primomo concluded, Plaintiffs have not alleged specific facts crucial to immunity that demonstrate a need for discovery, and no basis exists for finding that the requested discovery is likely to produce the facts needed to withstand a 12(b)(1) motion.

Plaintiffs object, asserting that, unlike the plaintiff in the case relied upon by Magistrate Judge Primomo, they have submitted specific discovery requests that would produce evidence relating to the applicability of the independent contractor exception. Further, they argue that, unlike the discretionary function exception, the independent contractor exception cannot be resolved by regulation or statute alone, but requires a fact-intensive inquiry into numerous factors related to the government's control.

The Court finds Plaintiffs' objections to be well taken, and concludes that they should be permitted to engage in limited discovery pertaining to the independent contractor exception. Though the authority to control AFH granted in the cooperative agreement is the critical factor, the

23

determination of whether AFH was an independent contractor is not solely dependent upon the terms of the cooperative agreement. *Linkous v. United States*, 142 F.3d 271, 275-76 (5th Cir. 1998); *Batieste v. United States*, 100 Fed. Appx. 959 (5th Cir. 2004) (discussing applicable factors as the control given by the scope of work document and the "remaining factors that must be considered under *Linkous*"); *Rodriguez v. Sarabyn*, 129 F.3d 760, 765 (5th Cir. 1997); *Gonzalez v. United States*, 2007 WL 2008675 (S.D. Tex. July 5, 2007) ("Although control is the critical factor, it is not the *only* factor relevant to whether a person is a government employee."). The actual supervision of day-to-day operations and the factors listed in the Restatement are also relevant. *Cupit v. United States*, 964 F. Supp. 1104, 1009-10 (W.D. La. 1997). Plaintiffs have asserted a need for discovery to demonstrate, among other things, that federal project officer's duties included the supervision of daily operations at the Nixon facility. Moreover, the fact that Plaintiffs allege that government employees were negligent in their oversight of the Nixon facility does not necessarily negate their assertion that the government exercised day-to-day control over the Nixon facility's operations. Accordingly, the Court does not accept the recommendation to grant the motion to dismiss the Fourteenth Cause of Action.

Instead, the Court will deny the motion to dismiss this claim at this time, without prejudice to re-urging after Plaintiffs conduct discovery concerning the actual control exercised by ORR and its agents over the Nixon Facility.

### 3. Fifteenth Cause of Action

In their Fifteenth Cause of Action, Plaintiffs assert a claim based on Orr's negligent placement and detention of W.O.G. in an adult detention facility. Plaintiff alleges that he was unlawfully placed in an adult facility even though he was a minor, and that Defendant Orr

negligently continued to detain him at the adult facility for a month even though he knew W.O.G. was a minor. The United States asserts that this claim fails because it does not state a violation of state tort law that is cognizable under the FTCA. The FTCA limits the United States' liability to that of a private person in accordance with the law of the place where the act or omission occurred, in this case Texas. 28 U.S.C. § 1346(b)(1). The United States argues that there is no claim under Texas law against a private party for the negligent placement of a minor in an adult facility.

Plaintiff W.O.G. responds that he has stated a tort claim for negligence because he has established that Orr owed him a duty of reasonable care, the contours of which are informed by the *Flores* Agreement in addition to traditional tort factors, and that Orr breached that duty. In the alternative, W.O.G. asserts that determination of this claim should be deferred until trial and that Plaintiff needs adequate discovery to fully respond. The United States argues that it may be liable under the FTCA only if Texas common law would recognize such a claim against a "private person," but Plaintiffs have not identified a "single case in which a court has found that the general principles of negligence law in Texas support a claim based upon the detention of a minor in an adult facility." The United States contends that federal courts have uniformly rejected the theory that a federal statute or regulation can establish a duty and thus, interim regulations also cannot establish a duty.

Magistrate Judge Primomo concluded that W.O.G. has not identified a claim under Texas law against a private party for negligent placement of a minor in an adult facility and that Orr did not owe W.O.G. a duty to place him in a juvenile facility. However, this reads the requirements of the FTCA too narrowly. The FTCA provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for

punitive damages." 28 U.S.C. § 2674. The law requires only that a private person would be liable under "like circumstances," not identical circumstances. *United States v. Olson*, 546 U.S. 43, 46 (2005) ("[T]he words 'like circumstances' do not restrict a court's inquiry to the *same circumstances*, but require it to look further afield."). Thus, the Court turns to an examination of Texas negligence law to determine whether Texas courts have recognized liability for private persons in analogous circumstances.

Negligence claims require a duty, a breach of that duty, causation, and damages. The crucial inquiry here is whether Orr owed W.O.G. a duty that he breached by placing him an adult facility, where he "suffered emotional and physical harm." The analysis of this issue is made more difficult because Plaintiff never specifies the nature of the harm he suffered. The Court presumes that W.O.G. was harmed by third persons at the adult facility, and thus the relevant inquiry is whether Orr owed W.O.G. a duty to prevent that harm. The Restatement (Second) of Torts provides:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
> > (b) a special relation exists between the actor and the other which
> > gives to the other a right to protection.

Restatement (Second) of Torts § 315. Section 314A(4) lists special relations giving rise to a duty to protect, including:

> (4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

Restatement (Second) of Torts § 314A. Comment d states that "[t]he duty to protect the other against unreasonable risk of harm extends to risks arising out of the actor's own conduct" and "extends also to risks arising from forces of nature or animals, or from the acts of third persons,

whether they be innocent, negligent, intentional, or even criminal." Comment e states that "[t]he duty in each case is only one to exercise reasonable care under the circumstances. The defendant is not liable where he neither knows nor should know of the unreasonable risk ...."

The Court has located only one case, *Applebaum v. Nemon*, 678 S.W.2d 533, 535-36 (Tex. App.–Houston [14th Dist.] 1984, writ ref'd n.r.e.), in which a Texas court has expressly recognized the duty listed in § 314A(4). In that case, the court held that a day care center agrees to care for a child and protect the child from harm in exchange for a fee, and thus the custody situation could give rise to a special relationship triggering a duty to render aid when the child becomes injured on the playground. But the Court has not located any Texas cases recognizing the duty to protect in the context of persons in custody being harmed by third persons whose conduct the defendant cannot control, as in this case,[5] and thus is not clear that Texas courts would recognize such a duty on the part of Orr in this context.

Plaintiff argues that Orr owed Plaintiff a duty of ordinary care and that his violation of the *Flores* Agreement constitutes evidence of negligence in the performance of that duty. Plaintiff specifically eschews any theory that the *Flores* Agreement establishes a duty of care. Objections

---

[5] Texas courts have recognized the duty in Restatement (Second) of Torts § 320, which provides: "One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him, is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor (a) knows or has reason to know that he has the ability to control the conduct of the third persons, and (b) knows or should know of the necessity and opportunity for exercising such control. RESTATEMENT (SECOND) OF TORTS § 320 (1965); *Salazar v. Collins*, 255 S.W.3d 191, 200-01 (Tex. App.–Waco 2008, no pet.); *Tex. Dep't of Mental Health & Mental Retardation v. McClain*, 947 S.W.2d 694, 697-87 (Tex. App.–Austin 1997, writ denied). Though this section appears analogous, there is no indication that Orr had any ability to control anyone at the adult facility where W.O.G. was detained. Plaintiffs may move for leave to amend and assert a claim if they can show that Texas case law would recognize a duty on these facts.

docket no. 105 at 7.[6] Plaintiff points out that *Flores*, the INA, and Texas statutes require that juveniles be detained separately from adults, and, as long as state tort law creates the relevant duty, the FTCA permits suit for violations of federal statutes and regulations. While this may be true, and while Orr certainly does have a duty of reasonable care not to negligently harm W.O.G. by his own actions,[7] the Court has already noted that Texas law does not generally recognize a duty to protect someone from harm by a third person, and Plaintiff has not provided the Court with any cases demonstrating that Texas courts have recognized a duty on facts analogous to this case.

To the extent W.O.G. is alleging some harm other than that caused by third persons, he has failed to make that clear because the Complaint and the briefing never indicate the nature of the harm W.O.G. allegedly suffered.[8]

Accordingly, the Court finds that this claim should be dismissed for lack of jurisdiction. Plaintiffs may move for leave to amend their complaint to re-assert this claim if they are able to demonstrate that Texas law would recognize a duty.

### 4. Sixteenth Cause of Action

In the Sixteenth Cause of Action, Plaintiffs assert a claim for negligent infliction of emotional distress. The United States asserts that this claim fails to state a violation of state tort law that is cognizable under the FTCA. Recognizing that there is no cause of action for negligent infliction of

---

[6] Plaintiff states that he "does not allege that *Flores* creates a duty under Texas law." Objections docket no. 105 at 10 n.4. Rather, he argues that *Flores* defines the standard of care that Orr owed to W.O.G. Plaintiff also does not appear to allege a claim for negligence per se, as he repeatedly asserts only an ordinary duty of care as the relevant duty.

[7] Of course, to the extent W.O.G. is alleging Orr negligently caused him emotional harm, Texas does not recognize a cause of action for negligent infliction of emotional distress.

[8] Further, without articulating what harm he suffered, W.O.G. fails to plausibly demonstrate that the risk of that harm was reasonably foreseeable.

emotional distress under Texas law, Plaintiffs stipulate to dismissal of this claim.

### 5. Twentieth Cause of Action

In the Twentieth Cause of Action, Plaintiffs E.R.J. and P.A.S.G. alleged that Gonzalez, AFH, and Gaytan interfered with their attorney client relations. The complaint does not specify a basis for this claim.[9] The United States asserts that, to the extent it is a claim under the FTCA, it fails because Texas common law does not recognize a claim for interference with attorney-client relationships. Plaintiffs want to "transfer their claim for damages for such harms to their Nineteenth Cause of Action" and agree to dismiss this claim subject to their request for leave to amend "in order to assign their claim for emotional duress and other damages resulting from the interference in their relationship with their attorneys" as part of their Nineteenth Cause of Action. Docket no. 78 at 25; docket no. 85 at 15. This request is granted, and any claims asserted against the United States in the Twentieth Cause of Action are dismissed.

### 6. O.E.F.'s FTCA claims

Finally, the United States asserts that all of Plaintiff O.E.F.'s FTCA claims fail because he failed to exhaust his administrative remedies. Plaintiffs acknowledge that O.E.F.'s claim was filed one day before his administrative remedies were exhausted. Magistrate Judge Primomo recommends dismissing this claim. Plaintiffs respond "solely to object to any dismissal with prejudice." The Court will dismiss O.E.F.'s FTCA claims without prejudice.

## Conclusion

The Recommendation of the Magistrate Judge is accepted in part and rejected in part.

---

[9] To the extent this asserts a *Bivens* claim against Gonzalez, it has been dismissed in this Court's order on the Individual Defendants' Motion to Dismiss.

Accordingly, the United States' Motion to Dismiss and Motion for Partial Summary Judgment (docket no. 64) is GRANTED IN PART, DENIED IN PART, and DISMISSED IN PART as follows:

The motion to dismiss the official-capacity claims asserted in the Tenth and Eleventh Causes of Action is granted, and these claims are dismissed without prejudice. The Tenth and Eleventh Causes of Action are thus dismissed in their entirety.

The official capacity claim for injunctive relief in the Fifth Cause of Action is dismissed without prejudice.

The motion to dismiss the Twelfth, Thirteenth, and Fourteenth Causes of Action is denied without prejudice to re-urging after Plaintiffs conduct limited discovery. To minimize any conflicts, Plaintiffs shall file their proposed discovery with the Court no later than **April 6, 2009** and Defendants shall file any objections to the proposed discovery no later than **April 9, 2009**. The Court will then issue an order concerning the allowable discovery.

The Fifteenth and Sixteenth Causes of Action are dismissed without prejudice.

The claims against the United States in the Twentieth Cause of Action are dismissed. Plaintiffs are granted leave to amend the Nineteenth Cause of Action as requested.

All of Plaintiff O.E.F.'s FTCA claims are dismissed without prejudice.

The Motion for Summary Judgment is DISMISSED, as all issues are being resolved under Rule 12(b)(1).

SIGNED this 31st day of March, 2009.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE