UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DAVID WALDING, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| VS. ) | Civil Action No: SA-08-CA-124-XR |
| ) | *consolidated with* SA-08-CA-724-XR |
| UNITED STATES OF AMERICA, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

On this date, the Court considered Individual Defendant Wolde's Motion to Dismiss the Fourth Cause of Action in Plaintiffs' First Amended Complaint (docket no. 155). The motion is granted in part and denied in part.

**I. Background**

Plaintiffs' Fourth Cause of Action in the First Amended Complaint filed in SA-08-CA-724 alleges "*Flores* and *Bivens* claims" under the Fifth Amendment against Defendant Tsegaye Wolde and others in their individual capacities. Plaintiffs, who are undocumented, unaccompanied minors who were housed at the Nixon facility, allege that they were abused while at the facility, and that the facility failed to comply with the settlement agreement in *Flores v. Reno*. Individual federal defendant Tsegaye Wolde, who was the "DUCS[1] project officer for the Nixon facility" and "an ORR[2] agent and officer based in Washington D.C." moves to dismiss the individual-capacity claims asserted against him in the Fourth Cause of Action.

---

[1] Division of Unaccompanied Children's Services.

[2] Office of Refugee Resettlement.

1

In the factual predicate to the First Amended Complaint, Plaintiffs allege that "[a]ll Defendants knew and/or should have known and/or were deliberately indifferent to the rampant physical and sexual abuse of the Plaintiffs at the Nixon facility." First Am. Compl. ¶ 111. "All Defendants knew and/or should have known and/or were deliberately indifferent to the rampant *Flores* violations at the Nixon facility." *Id.* ¶ 112. "All Defendants knew and/or should have known and/or were deliberately indifferent to the rampant interference with the Plaintiffs' right to counsel and access to courts." *Id.* ¶ 113. "All Defendants refused and failed to carry out their legal duties to protect the Plaintiffs and assure their rights under the *Flores* settlement, the constitution, and other state and federal laws." *Id.* ¶ 115. "Defendants United States and Wolde, knowingly, intentionally, and/or with willful indifference and/or recklessly and/or negligently refused and failed to properly investigate, screen, select and train all persons and/or organizations with whom the unaccompanied minors, including the Plaintiffs, might be placed; as well as to properly monitor, supervise, guide and correct the conditions at such facilities." *Id.* ¶ 116. "Defendants United States and Wolde knowingly, intentionally, and/or with willful indifference and/or recklessly and/or negligently refused and failed to properly monitor, supervise, control, report on, and correct the ongoing conditions and treatment of the minors at the Nixon facility." *Id.* ¶ 117. "By continuing to permit the ongoing abuses at the Nixon facility, without taking any reasonable steps to protect the Plaintiffs, such as suspension of funding or requiring the termination or other discipline of staff, Defendant Wolde de facto agreed to such abuse, and aided, abetted and conspired to permit its continuance." *Id.* ¶ 118. "Defendant Wolde took no reasonable steps to address the ongoing and rampant abuses and legal violations at the Nixon facility." *Id.* ¶ 119.

The Fourth Cause of Action alleges that "[t]he terms and conditions of the Stipulated

Settlement in *Flores v. Reno*, supra, have binding legal effect upon all agents and officers of the ORR and ICE[3], as well as the federal agencies themselves." First Am. Compl. ¶ 154. "The terms and conditions of such settlement, regarding safe and humane conditions are set forth in mandatory language." *Id.* ¶ 155. "Plaintiffs are entitled to receive the treatment, conditions, and protections set forth in the settlement, including the guarantee of safety from physical abuse." *Id.* ¶ 156. Plaintiffs allege that they "have property and liberty rights in such safe conditions, which fall within the protection of the 5th Amendment of the United States Constitution." *Id.* ¶ 157. Plaintiffs contend that "Defendants Tsegaye Wolde, Rains, Garza, Amaya, Velasquez, Vasquez and Monreal deprived the plaintiffs of such property and liberty rights by knowingly and intentionally refusing and failing to halt the rampant physical/sexual abuses at the Nixon facility or to otherwise protect the Plaintiffs" and that "[a]s a result of Defendants' refusal and failure, the Plaintiffs were deprived of the safe environment to which they were entitled, and suffered sexual and physical assaults during their detention at Nixon." *Id.* ¶¶ 158, 159. Plaintiffs further allege that "Defendants also deprived the Plaintiffs of other rights guaranteed by the *Flores* settlement, including but [not] limited to the right to privacy, reasonable exercise, communications with family and attorneys, and proper medical care." *Id.* ¶ 160.

## II. Analysis

Defendant Tsegaye Wolde moves to dismiss Plaintiffs' *Bivens* and *Flores* claims in the Fourth Cause of Action against him in his individual capacity, asserting the defenses of failure to state a claim and qualified immunity. Though not clearly differentiated in the Complaint, as noted by Wolde, Plaintiffs' Fourth Cause of Action includes two separate claims – a direct *Bivens* claim

---

[3] Immigration and Customs Enforcement.

and a claim predicated on violations of the *Flores* Agreement. The claims predicated on violations of the *Flores* Agreement are asserted under the theory that the provisions of the *Flores* Agreement created liberty and property interests protected by the Due Process Clause of the Fifth Amendment, and thus due process was violated when the *Flores* Agreement's provisions were violated. Wolde argues that, to the extent Plaintiffs assert this claim under the *Flores* agreement (the due process entitlement claim), they must accept the limitations on enforcement within the agreement itself. Specifically, Wolde points out that the Agreement contains a limited provision for judicial review, allowing a minor to seek judicial review alleging noncompliance with the Agreement's standards, but limiting relief to an order solely affecting the individual claims of the minor. Thus, Wolde argues, the Agreement does not authorize an individual capacity suit for money damages, especially given that Wolde was not a party to the Agreement. Wolde further contends that the Agreement does not act as an independent source of constitutional rights and that, even if it could, Plaintiffs have not stated a violation of a clearly established right, as Wolde could not have been on notice that the *Flores* Agreement could be a source of constitutional rights.

With regard to the "direct" *Bivens* claim for violations of the Constitution, Wolde argues that Plaintiffs have not alleged facts establishing that he failed to protect them in violation of the Fifth Amendment and that Plaintiffs attempt to hold him liable solely under a theory of *respondeat superior*. Wolde further contends that Plaintiffs have failed to establish Wolde's personal participation in the alleged abuses, and have failed to show that he had actual knowledge of the abuse and acted with deliberate indifference. Wolde asserts that Plaintiffs rely on the fact that the abuse was allegedly widespread, rampant, open, and notorious, but contends that Plaintiffs do not claim that any of the events made the basis of their claims took place after Wolde allegedly knew

4

of the abuse. Wolde also asserts that Plaintiffs have failed to establish that he personally implemented any policy that caused a violation of their constitutional rights. With regard to the alleged interference with attorney/client relationships, Wolde argues that Plaintiffs have failed to specifically allege "a single instance in which Wolde personally denied any Plaintiffs the opportunity to consult with counsel, much less any violation of a Plaintiff's right to obtain counsel or impinge any right to a fair hearing." Motion at 18. Last, Wolde argues that Plaintiffs' claims regarding a violation of the right to privacy are conclusory and fail to establish a due process violation.

**A. *Flores* Agreement violation claims**

Plaintiffs allege that the specific terms of the *Flores* Agreement were violated in many respects, including that Plaintiffs had no doors on their bedrooms and had no privacy, were permitted to exercise outdoors only once or twice per week, did not receive needed medical attention, were constantly subjected to humiliating and improper punishments, including being deprived of meals and being forced to sleep in the hallways, and were subject to derision and insults because of their undocumented status. Plaintiffs contend that the agreement was also violated when Plaintiffs were subjected to sexual and physical abuse by the Nixon facility staff, noting that nine Plaintiffs complain of sexual abuse by Belinda Leal, Plaintiff W.O.G. complains of sexual abuse by another staff person, and two Plaintiffs allege physical abuse by two different staff members. With regard to Wolde, Plaintiffs contend that he "knowingly refused to halt the rampant sexual, physical, emotional and other abuses and other ongoing violations of the *Flores* agreement at the Nixon facility."

In the lead case, this Court previously dismissed similar claims raised in the Eleventh Cause

5

of Action, which alleged due process violations based on alleged entitlements created in the *Flores* Agreement. The plaintiffs in the lead case alleged that the defendants deprived them of protected property and liberty rights created by the *Flores* agreement "by knowingly and intentionally refusing and failing to halt the rampant physical/sexual abuses at the Nixon facility or to otherwise protect the Plaintiffs." Second Am. Compl. ¶¶ 239-243.

The Court noted that it was apparently undisputed that the *Flores* settlement agreement, which is in effect a remedial decree, does not in and of itself confer any constitutional rights upon the plaintiffs, and that Fifth Circuit case law is clear that remedial decrees confer no such rights. *See Connall v. Collins*, 71 F.3d 875 (5th Cir. 1995); *Green v. McKaskle*, 788 F.2d 1166 (5th Cir. 1988); *Galloway v. State of La.*, 817 F.2d 1154 (5th Cir. 1987). Thus, this Court held, "[b]y analogy, violations of the *Flores* Agreement, standing alone, cannot support a *Bivens* action." The plaintiffs argued, however, that the *Flores* Agreement was elevated to the status of interim federal regulations[4] with the consent of the INS, and that it created protected liberty and property interests insofar as it included mandatory language that did not allow for the exercise of discretion. Thus, plaintiffs reasoned, such a violation of due process would be an independent constitutional violation, and a remedy for such a violation is not precluded by *Green* and its progeny.

After closely reviewing the terms of the *Flores* Agreement, the Court concluded that the plaintiffs failed to allege that they were deprived of a protected entitlement established by the *Flores* Agreement and, even if they were, they failed to demonstrate that permitting a *Bivens* action for damages for such deprivation would be appropriate. With regard to many of the entitlements

---

[4] Plaintiffs did not contend that the violation of a federal regulation is itself actionable under *Bivens*; rather, they argued that when a federal regulation is couched in terms that create an entitlement, that entitlement is subject to due process protections.

6

claimed by the plaintiffs, the Court found they were not sufficiently mandatory to limit officials' discretion. For example, to the extent the *Flores* Agreement requires "safe conditions," it speaks only in broad terms and does not provide fact-based, objective criteria, instead involving intangible assessments and discretionary factors. *See Washington Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 36 (D.C. Cir. 1997). Further, the Court noted that the Agreement's intent was to create minimum guidelines and requirements regarding the minors' conditions of confinement to try to ensure their well being and safety, and it does not purport to guarantee prevention of the episodic acts of abuse by program staff such as occurred here. The Court concluded that the plaintiffs failed to show that they were deprived of any entitlement to "safe conditions" created by the Agreement. The Court further concluded that, even if Plaintiffs had established an entitlement protected by due process and that a *Bivens* action is appropriate, the defendants would be entitled to qualified immunity because the plaintiffs' constitutional rights were not clearly established at the time.

Plaintiffs now argue that "[t]his case differs from the main consolidated case ... in that the *Flores* entitlement claim here covers a broad array of violations, including but not limited to: rampant sexual abuse, improper punishments, (including beatings by Away From Home Inc. staff, forcing the children to sleep in hallways, depriving them of meals and the infliction of humiliating measures); denial of reasonable privacy (including but not limited to the lack of doors on their bedrooms), the denial of daily outdoor exercise and recreation; and the denial of adequate medical and mental health assessments and care, and interference with family and attorney communications" and that all of the children suffered these violations. Plaintiffs note that they are claiming "that the defendants often interfered with their attorney client relationships and communications as an

7

improper form of punishment, and hence in violation of the *Flores* requirements." Response at 21.[5]

Though Plaintiffs' claims in this member case are based on both episodic acts and general conditions of confinement rather than only episodic acts (as in the lead case), most of the provisions in the Agreement are insufficiently specific or mandatory to create an entitlement. To the extent that a few of the provisions Plaintiffs herein rely on are couched in specific, mandatory language – such as that minors are entitled to "daily outdoor activity, weather permitting, at least one hour per day of large muscle activity and one hour per day of structured leisure time activities" – the Court nevertheless finds, as discussed below, that Plaintiffs' entitlement claims fail.

First, as the Court held in the lead case, to the extent the Agreement did create any specific expectations, it contemplates that such entitlements regarding conditions of confinement would be remedied via an action to enforce the terms of the Agreement rather than an action for damages, and Plaintiffs cannot claim a legitimate expectation to benefits and remedies greater than those expressed in the Agreement. As the Court previously noted, permitting a *Bivens* action for violations of every specific, mandatory term of the *Flores* Agreement would permit actions for damages for things such as Plaintiffs' inability to wear their own clothes. Not every expectation created by the Agreement should be enforceable via a *Bivens* action for damages, especially when the Agreement expressly provides a mechanism for resolving violations of the conditions required by the Agreement and preserves Plaintiffs' right to pursue damages actions for violations that amount to constitutional deprivations.

Second, as the Court previously held, even if the Plaintiffs had established that they were

---

[5] Thus, Plaintiffs are asserting their claim of interference with attorney/client relations only through their due process entitlement theory, and the Court need not address whether Plaintiffs have otherwise stated a *Bivens* claim in this regard.

deprived of an entitlement created by the *Flores* Agreement, Wolde would be entitled to qualified immunity for claims based on violations of the Agreement because the law underlying the Plaintiffs' claims was not clearly established in 2006 or 2007. Specifically, though the law of due process entitlements and deprivations was clearly established, Wolde would not have been given "fair warning" that the *Flores* Agreement created protected interests such that his conduct in violation of the Agreement would deprive Plaintiffs of a protected entitlement and subject him to a *Bivens* action.

The Court sees no basis for holding differently in this member case than it did in the lead case. Wolde's motion to dismiss the claims in the Fourth Cause of Action that are premised on due process entitlements created by the *Flores* Agreement is granted.

**B. *Bivens* claims independent of the *Flores* Agreement**

Plaintiffs' Complaint and briefing focus primarily on their entitlement theory. But both parties recognize that Plaintiffs also assert a claim directly under *Bivens* based on a failure to protect. This claim is similar to the Fourth Cause of Action in the lead case. Applying the *Farmer v. Brennan* deliberate indifference standard, the Court held in the lead case that

> Plaintiffs have alleged that they were in the custody of the federal agencies, that these Defendants had supervisory authority and control over the facility in which they were housed, that Defendants had knowledge of the dangers and risk of harm to Plaintiffs, that Defendants were deliberately indifferent to the risk and failed to take reasonable action, and that Plaintiffs suffered harm as a result. The Court agrees with Magistrate Judge Primomo that the Plaintiffs have stated a claim that is plausible and overcomes the qualified immunity defense. *See Brumfield v. Hollins*, 551 F.3d 322 (5th Cir. 2008) (concluding that plaintiff's allegation that sheriff's failure to implement policies pertaining to supervision and medical care and failure to train or supervise his subordinates deprived plaintiff of his constitutional right to adequate protection and reasonable medical care "alone might be enough to survive a motion to dismiss"); *Jacobs*, 228 F.3d at 393-94 (it has been clearly established since 1989 that officials will be liable for episodic acts or omissions resulting in the violation of a detainee's clearly established constitutional rights if they "had

subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk").

In this case, Plaintiffs contend that Wolde, as Project Officer, carried out the detailed daily supervision and control of the ORR program, including at the Nixon facility, and "on information and belief" conducted the oversight of the day-to-day operations of the grant/cooperative agreement, including but not limited to the program design and changes and budget issues; conducted desk monitoring to assure compliance with the ORR agreement, including on-site visits, review of staff credentials, and job descriptions; supervised the appropriate program response to significant problems and incidents, such as abuse or escapes, including recommendations and corrective action plans; reviewed all materials necessary to ensure that the program is conducted in keeping with ORR requirements; monitored compliance with basic standards; and acted as liaison in implementing and administering ORR's program requirements. Response at 7 & n.6. Plaintiffs allege that the abuse was open and notorious *and* that Wolde was informed of and aware of the abuse, that Wolde was deliberately indifferent to the risk, and that Plaintiffs suffered harm as a result. As in the lead case, the Court finds that Plaintiffs have stated a claim sufficient to overcome qualified immunity on the failure-to-protect claim, and the motion to dismiss this claim is denied.

It is not clear to what extent Plaintiffs are alleging a denial-of-medical care claim other than as part of their entitlement due process claim under the *Flores* Agreement. The current complaint does not contain sufficient facts to overcome a qualified immunity defense by Wolde on such a claim, however, as there is no indication that Wolde was aware that any Plaintiff needed medical attention but was deliberately indifferent to such a need. Thus, to the extent Plaintiffs are asserting an independent *Bivens* action for denial of medical care, Wolde is entitled to qualified immunity on the current pleadings. Plaintiffs have sought leave to replead if necessary, however, and Plaintiffs

10

are given leave to supplement their Complaint or file an Amended Complaint alleging facts in support of such a claim if they so desire.

## Conclusion

Individual Federal Defendant Wolde's Motion to Dismiss the Fourth Cause of Action of Plaintiffs' Complaint (docket no. 155) is GRANTED IN PART AND DENIED IN PART as discussed herein.

It is so ORDERED.

SIGNED this 15th day of December, 2009.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE