UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| E.A.F.F., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| VS. | ) Civil Action No: SA-08-CA-124-XR |
| | ) |
| UNITED STATES OF AMERICA, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

On this date, the Court considered the Bill of Costs (docket no. 356) filed by the federal Defendants in this case. The federal Defendants include the individual federal defendants and the United States.

**Analysis**

The federal Defendants were prevailing parties in this case and are entitled to costs pursuant to Rule 54(d) and 28 U.S.C. § 1920.[1]  The federal Defendants seek a total award of $100,292.02 in

---

[1] Plaintiffs' FTCA claims against the United States were dismissed for lack of jurisdiction. Title 28 U.S.C. § 1919 provides, "Whenever any action or suit is dismissed in any district court, the Court of International Trade, or the Court of Federal Claims for want of jurisdiction, such court may order the payment of just costs." The Fifth Circuit has recognized that an award of costs under § 1919 is discretionary. *See Religious Tech. Ctr. v. Liebreich*, 98 F. App'x 979, at *986-87 (5th Cir. 2004). However, the United States is a prevailing party under Rule 54, which provides, "Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). The Fifth Circuit has noted,

> Section 1919 was enacted to empower courts to award costs even if the court's dismissal for lack of jurisdiction did not result from a merits adjudication. *See Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 387, 4 S. Ct. 510, 28 L. Ed. 462 (1884). However, where there is a prevailing party (as here) § 1919, which merely empowers the court to award costs and does not direct the court with regard to its discretion, does not conflict with Rule 54(d)(1) and therefore does not "provide otherwise."

costs.² Plaintiffs timely filed objections to the Bill of Costs.

Federal Rule of Civil Procedure 54(d) provides, "Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party." Section 1920 defines the term "costs" as used in Rule 54(d) and enumerates the expenses that a federal court may tax as a cost under the authority found in Rule 54(d). *Gaddis v. United States*, 381 F.3d 444, 450 (5th Cir. 2004); *see also Crawford Fitting Co. v. Gibbons*, 482 U.S. 437, 441 (1987). Thus, unless otherwise authorized by statute, the types of costs that may be awarded under Federal Rule of Civil Procedure 54(d) are limited to those enumerated in 28 U.S.C. § 1920. *Id.*; *see also Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S. Ct. 1997, 2001 (2012).

Section 1920, Taxation of costs, provides:

A judge or clerk of any court of the United States may tax as costs the following:
(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;
(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title;
(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

---

*PHI, Inc. v. Office & Professional Employees Int'l Union*, 440 F. App'x 394, at *397 n.3 (5th Cir. 2011).

² The federal Defendants' initial Bill of Costs sought $101,270.23, which included $978.21 for certain transcript costs. Defendants informed the Court that invoices for these transcripts were no longer maintained in hard copy and would need to be retrieved from microfilm, and that Defendants would supplement the Bill of Costs with the receipts. Defendants later informed the Court that copies of the receipts were not retrieved, and have withdrawn the request for reimbursement of those costs. Docket no. 362.

28 U.S.C. § 1920.

**A**. <u>fees for printed or electronically recorded transcripts</u>

Defendants seek $27,869.14 in "fees for printed or electronically recorded transcripts necessarily obtained for use in the case." This amount includes numerous deposition and transcript costs.

*1. expedited hearing transcript*

Defendants seek $16.20 for the cost of an expedited transcript of the August 19, 2008 telephonic hearing. At this hearing, the Court ruled that discovery would be stayed pending a ruling on dispositive motions, and issued deadlines for responding and replying to pending dipositive motions. Defendants' attorneys participated in the hearing and have not demonstrated that a copy of this transcript, much less an expedited copy, was necessarily obtained for use in the case as opposed to convenience. This cost is disallowed.

*2. deposition transcripts and certified copies of deposition transcripts*

Defendants seek costs for a number of original deposition transcripts and certified copies. Contrary to Plaintiffs' argument, depositions need not be shown to be necessary for or used in conjunction with summary judgment to be recoverable under § 1920(2). Rather, a deposition is necessarily obtained for use in the case "[i]f, at the time the deposition was taken, a deposition could reasonably be expected to be used for trial preparation, rather than merely for discovery." *Fogleman v. ARAMCO*, 920 F.2d 278, 285 (5th Cir. 1991); *Copper Liquor v. Adolph Coors Co.*, 684 F.2d 1087, 1099 (5th Cir.1982) ("While some cases hold that the costs of depositions are taxable only if they were either introduced in evidence or used at trial in examining or impeaching witnesses, the more equitable as well as more practical view is to allow the recovery of such expense if the taking of the

deposition is shown to have been reasonably necessary in the light of facts known to counsel at the time it was taken.").

However, as pointed out by Plaintiffs in their objections, Defendants are seeking costs for two copies of almost all of the depositions - one for the U.S. Attorney's Office in the Western District of Texas and one for the Department of Justice in Washington, D.C. ("Main Justice"). The cost for a copy of a deposition is taxable only if the copy was necessarily obtained for use in the case, and defendants bear the burden of establishing necessity. *J.T. Gibbons, Inc. v. Crawford Fitting Co.*, 760 F.2d 613, 615 (5th Cir. 1985).

Because the attorneys are all supervised and directed by the Attorney General, they may be treated as a single law firm for purposes of costs. *See* 28 U.S.C. § 519. As Plaintiffs note, costs for duplicate transcripts for lawyers in the same firm are generally considered to be for the attorneys' convenience rather than necessary for use in the case. Even if the U.S. Attorney's office for the Western District of Texas and Main Justice are more appropriately viewed as separate firms, courts have often disallowed multiple copies of depositions on the presumption that they were obtained for convenience of counsel, absent a showing that multiple copies were necessary. *See, e.g.*, *Chenault v. Dorel Industries*, No. A-08-CA-354-SS, 2010 WL 3064007, at *3 (W.D. Tex. Aug. 2, 2010). Plaintiffs objected to the fact that Defendants were seeking two copies of the depositions, and Defendants have not replied with evidence or argument that the second copies were necessary as opposed to merely for convenience. Accordingly, the Court will award costs for only one copy of deposition transcripts. The Court has reviewed the list of deposition transcripts and finds that all of the depositions were necessarily obtained for use in the case. Therefore, the costs of original

deposition transcripts or a single copy will be allowed.[3]

However, the $168.50 cost for the certificate of non-appearance for Plaintiff L.M.V.F. will not be allowed because a certificate of non-appearance is not a deposition transcript and is not authorized by § 1920. *Shaw v. Hardberger*, No. SA-06-CV-751-XR, 2010 WL 1424726, at *2 (W.D. Tex. Apr. 7, 2010) ("Section 1920 does not authorize costs for certificates of nonappearance.") (citing *Canion v. United States*, No. EP–03–CA–0347–FM, 2005 WL 2216881, at *3 (W.D. Tex. Sept. 9, 2005)).

Plaintiffs argue that all requested charges for Main Justice's copies of depositions, a total of $13,442.71, should be disallowed. However, not all of Main Justice's requested deposition transcript costs were copies, though most are. The invoices indicate that the costs of transcripts of the depositions of Dr. Lewis ($1,604.00), Dr. Ayoub ($2,368.71), and Nathalie Lummert ($455.40) incurred by Main Justice are the costs of original transcripts, not copies. Further, only Main Justice requests costs for a copy of Jose Gonzalez's deposition ($553.20). Thus, these deposition transcript costs are allowed for Main Justice. However, it is this Court's routine practice to disallow costs such as delivery costs that are not directly related to the preparation of the transcript. Accordingly, the Court disallows the following costs: $7.50 delivery fee for Dr. Lewis's deposition and $181.21 for "DepoLaunch (Digitized bundle)" and "Original Compliance and Delivery" for Dr. Ayoub's

---

[3] The Court notes that it is difficult to discern in some cases which is the original and which is the copy, and in some cases Defendants appear to have obtained only copies. For example, the transcript of E.A.F.F.'s deposition is billed as a copy to both the local U.S. Attorney's office and Main Justice and is the same cost for each ($128.10). In such instances, the Court has awarded the cost of one copy to the local U.S. Attorney's office and has not awarded the cost to Main Justice. The Court has done so simply as a matter of administrative convenience and makes no determination as to which party should be allocated the costs. Otherwise, the Court has allocated the cost of the original deposition transcript to the party submitting that invoice, and disallowed the cost of a certified copy.

deposition. Defendants are therefore awarded $4,792.60 for deposition transcript costs incurred by Main Justice.

With regard to the deposition transcript costs requested by the U.S. Attorney's Office for the Western District of Texas, the following are not allowed in their entirety because they are copies: $345.15 for a copy of Nathalie Lummert's deposition; $1,451.94 for a copy of Dr. Ayoub's deposition, and $991.70 for a copy of Dr. Lewis's deposition. As noted, the $168.50 for the certificate of non-appearance at deposition for L.M.V.F. is not allowed. Deposition costs are therefore reduced by $2,957.29.

In addition, the Court reduces the costs of the other depositions by the following amounts: $66.75 for digital transcript/exhibits and delivery for Dr. Winkel's deposition; $171.75 for digital transcript/exhibits, summary, and delivery for Dr. Weiss's deposition; $113.50 for word index, condensed transcript, e-transcript, and shipping for Don Rains' deposition; $106.50 for word index, condensed transcript, e-transcript, and shipping for Maggie Gaytan's deposition; $144.50 for word index, ASCII, TC, e-transcript, and shipping for Hector Amaya's deposition, $126.50 for word index, ASCII, TC, e-transcript, and shipping for Efraen Garcia's deposition; $65 for word index, e-transcript, and shipping for Lesvia Monreal's deposition; $40 for word index and delivery charges for O.B.'s deposition; $65 for litigation CD, word index, and delivery charges for Hilary Chester's deposition; $65 for litigation CD, word index, and delivery charges for Tsegaye Wolde's deposition; $65 for litigation CD, word index, and delivery charges for James De La Cruz's deposition; $65 for litigation CD, word index, and delivery charges for Maureen Dunn's deposition; $50 for a litigation CD and word index for E.H.C.'s deposition; $65 for litigation CD, word index, and delivery charges for J.A.A.L.'s deposition; $50 for litigation CD and word index for O.E.F.'s deposition; $65 for

litigation CD, word index, and delivery charges for W.O.G.'s deposition; $50 for litigation CD and word index for J.C.C.B.'s deposition; $65 for litigation CD, word index, and delivery charges for J.M.R.'s deposition; $65 for litigation CD, word index, and delivery charges for O.B.'s deposition; $50 for litigation CD and word index for E.R.R.J.'s deposition; $65 for litigation CD, word index, and delivery charges for D.A.E.F.'s deposition; $50 for litigation CD and word index for P.A.S.G.'s deposition.  This is a total reduction of $1,669.50.

This results in a total award for transcripts, deposition transcripts, and copies of depositions to the Western District U.S. Attorney's office of $9,783.44 ($14,426.43 - $16.20 - $2,957.29 - $1,669.50).

**B. fees for exemplification and copies of papers necessarily obtained for use in the case**

Defendants further seek "fees for exemplification and copies of papers necessarily obtained for use in the case" in the amount of $65,067.09.  This amount includes two bills for $64,957.33 and $109.76 listed as "scanning of ORR documents for production."[4]  Defendants state that the invoices reflect "the fees paid for scanning ORR documents for electronic production in this case."  On April 23, 2014, this Court issued an Order concluding that Defendants could recover costs for scanning documents and other activities equivalent to "making copies" in conjunction with their discovery production.  The Court found that the copies were obtained for use during trial or trial preparation and thus were necessarily obtained for use in the case.  However, the Court requested supplemental briefing to clarify the nature of the costs incurred.  *See* docket no. 363.  Defendants have filed the requested supplemental briefing.  *See* docket no. 364.

Defendants seek costs for "scanning of ORR documents for production" in the amounts of

---

[4] ORR is the federal Office of Refugee Resettlement.

$64,957.33 and $109.76. The smaller invoice includes two separate costs: $92.12 for "document acquisition" described as "scan to digital image" and $17.64 for "document processing" described as "OCR Surcharge."[5] The Court will award $92.12 for scanning, since this is equivalent to making copies, but the Court does not award costs associated with the OCR surcharge because Plaintiffs state that they did not agree to OCR processing.

With regard to the larger invoice, which reflects a charge of $64,957.33 for "document processing," the supplemental briefing and evidence indicates that the document processing charge includes a $48,977.04 charge for scanning 408,142 pages, a $8,162.84 charge for endorsing (or numbering) those scanned pages, and $3,285.54 in sales tax. Courts are split regarding whether endorsing or electronic Bates-stamping is a recoverable cost. *Compare Chicago Bd. Option Exchange, Inc. v. Int'l Securities Exchange, LLC*, No. 07 CV 623, 2014 WL 125937, at *9 (N.D. Ill. Jan. 14, 2014) ("CBOE may also recover its 'branding' costs. Costs for bates stamping are recoverable."), and *Friends of Tahoe Forest Access v. U.S. Dep't of Agriculture*, No. 12-cv-01876 JAM-CKD, 2014 WL 1575622, at *2 (E.D. Cal. Apr. 17, 2014) ("[C]osts related to converting e-data from one format into another, blowbacks, and Bates stamping are valid exemplification costs.") *with Phillips v. WellPoint Inc.*, No. 3:10-cv-00357-JPG-SCW, 2013 WL 2147560, at *6 (S.D. Ill. May 16, 2013) ("[A]pplying a bates stamp number, creating an image load file, and creating a concordance-ready data load file are beyond the actual act of 'making copies' as allowed by the statute."), and *Crouch v. Teledyne Continental Motors, Inc.*, No. 10-00072-KD-N, 2013 WL 203408,

---

[5] OCR is "[a] technology process that translates and converts printed matter on an image into a format that a computer can manipulate . . . and, therefore, renders that matter text searchable." *Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 162 n.6 (3d Cir. 2012). OCR is generally used to render searchable documents maintained in hard copy format and scanned into a computer. *Proctor & Gamble Co. v. S.C. Johnson & Son, Inc.*, No. 9:08-CV-143, 2009 WL 440543 (E.D. Tex. Feb. 19, 2009).

at *26 (S.D. Ala. Jan. 17, 2013) ("[C]osts associated with electronic numbering or stamping are not recoverable."). At least two district courts in the Fifth Circuit have found that these costs are not recoverable as part of "making copies." *See, e.g.*, *Eolas Techs., Inc. v. Adobe Sys., Inc.*, 891 F. Supp. 2d 803, 806 & n.2 (E.D. Tex. 2012); *Rundus v. City of Dallas*, No. 3-06-CV-1823-BD, 2009 WL 3614519, at *4 (N.D. Tex. Nov. 2, 2009), *aff'd*, 634 F.3d 309 (5th Cir. 2011) (prevailing party not entitled to recover costs for electronic Bates labeling or coding). The Court concludes that endorsing is part of document processing rather than "making copies" and therefore does not allow the endorsing costs. Accordingly, the Court awards $48,977.04 for scanning, plus $2,816.18 in sales tax, for a total of $51,793.22 for the larger invoice.

The total award under § 1920(4) for making these copies is therefore $51,885.34.

### C. witness fees

Defendants seek $40 in witness fees for Dr. Gregory Lewis. Title 28 U.S.C. § 1821(b) provides, "A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance." Defendants are awarded the $40 witness fee.

### D. compensation of interpreters and costs of special interpretation services

Defendants seek $8,294.00 for compensation of interpreters. Section 1920(6) permits recovery of costs for "[c]ompensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title." 28 U.S.C. § 1920(6). In *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S. Ct. 1997 (2012), the Supreme Court held that § 1920(6) applies only to oral interpretation, and does not apply to translators of

9

written materials. Defendants' invoices indicate the following interpretation services were used: oral interpretation for Plaintiffs' depositions ($3,960); oral interpretation during psychological exam for E.H.C. ($200); oral interpretation during psychological evaluation of J.A.A.L. and E.A.F.F. ($1,800); oral interpretation during psychological evaluation of O.B. and E.R.R.J. ($1,470); oral interpretation for conference with D.A.E.F. ($850[6]). This amounts to a total of $8,280.00. These costs are allowed pursuant to § 1920(6).

**E**. **equitable considerations**

The total recoverable costs in this case amount to $74,781.38. Plaintiffs assert that no costs should be awarded, even though the federal Defendants are prevailing parties, due to various equitable considerations. Specifically, Plaintiffs argue that costs should not be awarded because they are indigent, their case raised matters of public importance, and the federal Defendants chose the judgment-proof co-Defendant AFH.

Although the Court has discretion in awarding costs, the Fifth Circuit has held that "Rule 54(d)(1) contains a strong presumption that the prevailing party will be awarded costs." *Pacheco v. Mineta*, 448 F.3d 783, 793 (5th Cir. 2006). Thus, the prevailing party is "prima facie entitled to costs," and a denial of costs is "in the nature of a penalty." *Id.* at 793-94 (quoting *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985)). The general discretion conferred by Rule 54(d)(1) has therefore been circumscribed by the judicially created condition that a court must articulate a good reason for denying costs. *Pacheco*, 448 F.3d at 794.

In *Pacheco*, the Fifth Circuit noted that it "has little case law addressing this issue," but that

---

[6] Defendants seek $864 as invoiced by the interpreter, but $14 is for parking, which does not qualify as interpretation and is not allowed under § 1920(6).

other circuits have invoked a wide range of reasons for withholding reasonable costs from a prevailing party, including: "(1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources." *Id.* The Fifth Circuit expressly noted that it was not deciding "whether any of these is a sufficient reason to deny costs." *Id.* at 794 n.18. In fact, the Fifth Circuit has previously held that "[t]he court cannot require the prevailing party to share costs unless the costs serve as a sanction." *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1017 (5th Cir. 1992); *see also Gonzales v. England*, 264 F.3d 1141, at \*2 (5th Cir. 2001) (same); *Martinez v. Ford Motor Co.*, 162 F.3d 1159, at \*2 (5th Cir. 1998) (same).[7] Thus, the Fifth Circuit has generally been reluctant to recognize exceptions to the presumption that costs should be awarded to the prevailing party. Assuming one of the exceptions might be recognized by the Fifth Circuit, the losing party bears the burden of overcoming the presumption and proving that one of the foregoing factors applies. *Wheat v. R & B Falcon Workover Co.*, 31 F. App'x 159, at \*6 (5th Cir. 2001).

Most circuit courts of appeals have held that a district court may consider a non-prevailing party's financial status in awarding costs. *E.g.*, *Lampkins v. Thompson*, 337 F.3d 1009, 1017 (8th Cir. 2003) (noting that the district court properly considered party's indigency and incarceration before assessing costs); *Whitfield v. Scully*, 241 F.3d 264, 273 (2d Cir. 2001) ("district courts retain discretion to limit or deny costs based on indigency"); *Chapman v. AI Transport*, 229 F.3d 1012,

---

[7] In an unpublished opinion, the Court has stated that, in this circuit, "courts may, but are not required to excuse a losing party from paying costs only if he brought suit in good faith *and* can demonstrate at least one of the five factors set forth in *Pacheco*." *Wade v. Peterson*, 416 F. App'x 354, at \*2 (5th Cir. 2011). That opinion, however, is unpublished and is not precedential.

1039 (11th Cir. 2000) (holding that a district court may, but need not, consider a party's financial status (upon clear proof), but should not consider the relative wealth of the parties, and the court may not decline to award any costs at all on this basis); *In re Paoli R.R. Yard PCB Litigation*, 221 F.3d 449, 464 (3d Cir. 2000) ("we hold that if a losing party is indigent or unable to pay the full measure of costs, a district court *may*, but need not *automatically*, exempt the losing party from paying costs") (emphasis in original).

The Fifth Circuit has not decided whether the Court may consider the non-prevailing party's indigency, but has held that the court may not consider the comparative wealth of the parties or the absolute wealth of the prevailing party as a basis for reducing or eliminating a cost award. *Moore v. CITGO Ref'g & Chems. Co., L.P.*, 735 F.3d 309, 319-20 (5th Cir. 2013).[8] District courts within the Fifth Circuit, including this Court, have generally held that indigency is not a sufficient reason to permit a losing party to avoid costs. *See, e.g.*, *Petri v. Kestrel Oil & Gas Properties, L.P.*, No. H-09-3994, 2013 WL 265973, at *7 (S.D. Tex. Jan. 17, 2013) ("indigency is not a reason to permit a losing party to avoid costs"); *Shaw v. Hardberger*, No. SA-06-CV-751-XR, 2010 WL 1424726, at *1 (W.D. Tex. Apr. 7, 2010) (noting that even those proceeding *in forma pauperis* may be required to pay costs); *C.H. v. Folks*, No. 10-CA-0114-XR, 2011 WL 3501862, at *5 (W.D. Tex. Aug. 9, 2011) (noting that the Fifth Circuit had not adopted an indigency exception and that even parties proceeding *in forma pauperis* may be liable for costs as in other proceedings). The Court has reviewed the arguments and evidence presented by Plaintiffs concerning their indigency, and declines to exercise its discretion to deny costs to the prevailing federal Defendants on this basis.

---

[8] In an unpublished opinion, the Court has indicated that proceeding *in forma pauperis* is alone insufficient to excuse costs. *Calton v. City of Garland*, 170 F. App'x 338, at *1 (5th Cir. 2006); *see also Washington v. Patlis*, 916 F.2d 1036, 1039 (5th Cir. 1990) (affirming award of costs against IFP plaintiff).

Plaintiffs contend that this Court should exercise its discretion to deny costs because Plaintiffs litigated matters of public importance and the federal Defendants chose Away From Home ("AFH") to house them. Plaintiffs argue that the federal Defendants selected AFH and monitored and supervised the facility while staff repeatedly sexually and physically assaulted the Plaintiffs, and that no one disputes these facts or argues that Plaintiffs were responsible for what happened to them. Docket no. 357 at 3. Plaintiffs argue that Defendants contracted with a company with inadequate insurance and few sources of income other than the federal contract itself, thereby creating the potential that people would be injured who could not be fully compensated. Because AFH was essentially insolvent, Plaintiffs accepted $11,000 each in settlement of their claims against AFH. Plaintiffs contend that the federal Defendants are equitably responsible for the fact that Plaintiffs could not hold AFH fully responsible.

Plaintiffs further argue that, even though the federal Defendants prevailed, "this litigation still raised important public issues that deserved the investigation undertaken by the attorneys on both sides, namely the need for protection of boys from sexual predators, proper protocols for physical contact, and adequacy of the government's monitoring practices." *Id.* Plaintiffs contend that this litigation served the public interest by increasing awareness of the vulnerability of young boys to sexual abuse by adults of both genders, by reminding the federal Defendants of the need to enforce the state-required better-practice standards, and by identifying where opportunities were missed for learning of the abuse at the earliest possible time. Plaintiffs also contend that several of their legal claims were close, and that awarding costs might dissuade potential plaintiffs from bringing causes of public importance in the future.

The Court does not find that the closeness of certain issues in this case warrants a denial of

costs. The Third Circuit stated in *In re Paoli R.R. Yard PCB Litigation*, 221 F.3d 449, 467 (3d Cir. 2000) that "though some courts of appeals permit district courts to consider the complexity or closeness of the legal issues involved in a case when imposing a costs award, . . . this factor is not an appropriate one for district courts to consider." The court reasoned that "to deny a prevailing party costs because it was successful in prosecuting or defending against a complex legal theory unduly punishes that party." *Id.* In addition, finding that a party should be excused from costs because the issues were close is akin to finding that the party should be excused because he brought the litigation in good faith, and the Fifth Circuit has rejected that as a basis for denying costs. Even if this Court has discretion to deny costs on this basis, it declines to do so.

The Court also rejects the "chilling effect" argument as a basis for denying costs. The presumption is that all losing parties must pay costs. All parties who bring litigation must factor in the potential of an award of costs in deciding whether to pursue litigation. The argument that an award of costs might deter future civil rights litigants would apply in all civil rights cases, but Congress has not exempted civil rights cases from the presumption of costs. Further, even if such a discretionary exception were recognized, a civil rights plaintiff would not know until the close of litigation whether the court would exercise its discretion to deny costs, and the plaintiff would still have to decide whether to bring litigation given the possibility of costs. Thus, given the general presumption, the Court's decision to deny costs in this case should have little effect on a future party's decision to pursue litigation so long as there is a presumption to award costs and a denial of such costs is purely discretionary.

The Court further declines to deny costs based on a public interest exception or on the federal Defendants' asserted culpable conduct. The Court has found in favor of the federal Defendants on

14

Plaintiffs' claims asserting that they are liable for their own conduct in selecting and supervising Away From Home, and the circumstances do not warrant creating an equitable exception for denying costs based on that same conduct. Plaintiffs are liable for the prevailing party's costs regardless of whether they are able to recover from other defendants. And while the issues litigated here were important, the Court finds that, like the fact that Plaintiffs acted in good faith and the issues were complex, that importance is insufficient for the Court to conclude that costs should be disallowed.

Last, Plaintiffs ask the Court to apportion costs among Plaintiffs. However, all Plaintiffs asserted primarily the same claims, and Plaintiffs have provided no legal or factual basis for apportioning costs among them.

## Conclusion

In sum, $74,781.38 in costs are awarded to Defendants as follows:

(1) $4,792.60 to Main Justice for deposition transcripts and copies of depositions;

(2) $9,783.44 to the U.S. Attorney's Office for the Western District of Texas for deposition transcripts and copies of depositions;

(3) $51,885.34 for making copies for discovery production;

(4) $40 for witness fees; and

(5) $8,280 for interpretation services.

SIGNED this 22nd day of May, 2014.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE